# Tennessee Coal, Iron & Ry. Co. *v.* Kelly.

*Damages for Depriving One of Employment.*

(Decided Nov. 18, 1909.—50 South. 1008.)

1. *Master and Servant; Procuring Discharge of Same; Liability.* —If one wrongfully and maliciously procured the discharge of a servant, by his employe, he will be liable, though the master had a right to discharge him; but if one procures it by doing only what he has a right to do, such as terminating by mutual agreement with the servant's employer, the contract of the employer to do certain work, whereby the employer had no further use for the employe, such person would not be liable, whatever his motive.

2. *Same; Evidence.*—Where the action was for the discharge of a servant procured by defendant cutting off water from a mill operated by the servant's employer on lands belonging to the defendant under a contract with the defendant it was not competent to show that the defendant who furnished water for the use of the mill had cut it off for the purpose of causing the mill to shut down, thus preventing plaintiff's employers from operating it and so causing plaintiff's discharge; a question of defendant's right to cut the water off and whether it did it in order to shut down the mill, not being an issue made by the pleading if indeed they could be made such.

3. *Same.*—The fact that defendant, after plaintiff's discharge warned plaintiff to keep off defendant's premises was not admissible since it raised an immaterial issue.

[Tennessee Coal, Iron & Ry. Co. v. Kelly.]

4. *Appeal and Error; Harmless Error; Evidence.*—Where evidence is clearly inadmissible and its direct tendency is to prejudice the jury against the defendant, its admission cannot be said to be harmless.

5. *Evidence; Opinion.*—A witness may not give his opinion and conclusion as to matters about which he is not shown to be qualified or competent to state an opinion; he must state the facts and let the jury draw the conclusion.

6. *Libel and Slander; Complaint.*—Where the publication is not libelous per se, complainant must allege special damages from the publication; must allege or show something additional to make the publication libelous.

7. *Same; Libelous per se.*—Such conduct not necessarily being a crime it is not libelous per se to charge that plaintiff had made trouble at defendant's mine, or that he had run negroes out of their home.

APPEAL from the Birmingham City Court.

Heard before Hon. C. C. NESMITH.

Action by Henry C. Kelly against the Tennessee Coal, Iron & Railway Company, for damages for procuring his discharge from employment and for libel and slander. Judgment for plaintiff and defendant appeals. Reversed and remanded.

PERCY, BENNERS & BURR, for appellant.—The court erred in admitting the letters signed by Allen and Wingate, also in permitting the plaintiff to show that water was supplied from appellant's mines to the sawmill of Waggoner & Hannon, as this was entirely immaterial to any issue in the case. The most that could be said of it was an abrogation of the contract between the Tennessee Company and Waggoner & Hannon with which plaintiff had no concern.—*Lovejoy v. Bessemer W. Wks.,* 146 Ala. 373. The court erred in admitting evidence that defendant warned plaintiff not to come upon its premises. This was prejudicial and immaterial. Its tendencies being to prejudice the jury against the defendant. The letters were not libelous per se and the court should have sustained the demurrers to the

complaint, as well as the objection to the admission of the letters.—*Gaither v. Adv. Co.*, 102 Ala. 458; *Ivy v. Pioneer S. & L. Co.*, 113 Ala. 349; 25 Cyc. 253. See also *Raycroft v. Tayntor*, 33 L. R. A. 225, and *Lancaster v. Hamberger*, 65 L. R. A. 856.

BOWMAN, HARSH & BEDLOW, for appellee.—Counsel discuss the assignments of error, and criticise the authorities cited by appellant, but without citation of authority in support thereof.

MAYFIELD, J.—Waggoner & Hannon, a partnership, were operating a sawmill on the lands of the defendant company, a corporation, which was engaged in the business of mining coal and iron ore, operating furnaces, etc. Waggoner & Hannon were sawing the timber of the defendant, for the defendant, for which they were paid so much per thousand. Waggoner & Hannon employed and discharged their own men; but there was some kind of an agreement between them and the defendant, the exact terms of which are not made very certain, to the effect that they would not employ nor retain employes who were not acceptable to the defendant company. It appears that there was trouble existing, and more brewing, between the union and non-union laborers, and that the defendant had declined to employ union men, and had notified Waggoner & Hannon that they should not employ, nor retain in their employment, union laborers, and that Waggoner & Hannon had failed to discharge some union laborers, in consequence of which the agents of the defendant, alleged to have been acting within the line and scope of their authority, wrote certain letters to Waggoner & Hannon, demanding the discharge of the union laborers, and in one letter named certain of the employes, charg-

ing that they were union laborers and that they "had run some of defendant's nonunion laborers out of their houses, and otherwise demoralized the organization of the coal mines department to such an extent that no one was at work." The plaintiff was named as one of the union men causing the disturbance. In consequence of these letters, or of other causes, which was one of the disputed issues, Waggoner & Hannon terminated their contract with defendant, and discharged all of their employes, including plaintiff, having no further need for them after they ceased to operate the mill. Plaintiff was employed in building and repairing houses, and as a carpenter, by Waggoner & Hannon. He was employed by the job and not for any stated time or fixed salary. Plaintiff denied being a member of the union, or having taken part in the disturbance alluded to in the letters; and there was no proof to the contrary.

Plaintiff sued the defendant, claiming damages for its wrongful and malicious procurement of a discharge, and its libeling him in the publication of the letters above referred to. The complaint contained seven counts. The first, sixth, and seventh were for defendant's wrongfully procuring his discharge, and the others were for libel, based solely upon the letters which, in whole or in part, were set out in the counts. There were no special pleas of justification or of privileged publication. The case was tried upon the general issue, and no questions are raised as to the sufficiency of the counts. The general charge was given in favor of the defendant as to the fourth count, and the trial resulted in verdict and judgment in favor of plaintiff for $1,000.

If the defendant without any lawful right, or by threats made not in the exercise of a lawful right, broke up the contractual relations existing between plaintiff

and his employers, although such relations could have been terminated at the pleasure of his employers, with resultant damage to plaintiff, the defendant would be liable to him for the damages thus occasioned. On the other hand, if the defendant only acted or threatened to act as it had a right to act or threaten, and only did or threatened to do that which it had a lawful right to do, and this did not involve a superior or paramount right of the plaintiff, this would give the plaintiff no right of action, though it may have caused him injury, and though defendant may have been actuated by a desire and intention to cause him injury. If one does an act which is legal in itself and violates no right of another, the fact that this rightful act is done from bad motives or with bad intent toward the person so injured thereby does not give the latter a right of action against the former. Therefore, if the defendant's acts complained of in this case were legal in themselves, and violated no superior right of the plaintiff, they were not actionable.

One of the rights incident to many, if not all, contracts is to be protected from malicious interference. A contract between master and servant is one of these contracts, though the contract of employment be at will, and though the master be free from liability in discharging the servant; yet if the discharge were wrongfully or maliciously procured by a third party, such third party is liable to the servant, and the motive with which the discharge was procured may, in some cases, determine the liability vel non, as well as go to the amount of damages. But if such third party, maliciously and without just cause, induce the master to discharge the servant, whether the inducement be false libels and slanders, or successful persuasion, it is nevertheless an actionable tort. But if the third party had

a perfect legal right to do what he did, which resulted
in the discharge of the servant, it is not an actionable
wrong, though he were actuated to do this legal and
rightful act by a malicious motive against the servant.

It is a violation of a legal right to interfere with con-
tractual relations recognized by law, if there be no suf-
ficient justification or excuse for so doing. Losses thus
willfully caused by another, from motives of malice, to
one who seeks to exercise and enjoy the fruits and ad-
vantages of his own labor, or skill, will sustain an ac-
tion.—*Raycroft v. Tayntor,* 68 Vt. 219, 35 Atl. 53,
33 L. R. A. 225, 54 Am, St. Rep. 882; *Perkins v. Pendle-
ton,* 90 Me. 175, 38 Atl. 96, 60 Am: St. Rep 252; *Porter
v. Mack,* 50 W. Va. 584, 40 S. E. 459; *Baker v. M. P. L.
Ins. Co.,* 64 S. W. 913, 23 Ky. Law Rep. 1174, 55 L. R.
A. 271; *Moran v. Dunphy,* 177 Mass. 485, 59 N. E. 125
52 L. R. A. 115, 83 Am. St. Rep. 289; *Curran v. Galen,*
152 N. Y. 33, 46 N. E. 297, 37 L. R. A. 802, 57 Am. Rep.
496; *Doremus v. Hennessy,* 176 Ill. 608, 52 N. E. 924,
54 N. E. 524, 43 L. R. A. 797, 802, 68 Am. St. Rep. 203;
*London Co. v. Horn,* 206 Ill. 493, 69 N. E. 526, 99 Am.
St. Rep. 185. It follows from these authorities that, if
the defendant wrongfully and maliciously procured the
discharge of the plaintiff, it is liable to him for the dam-
ages proximately resulting from that discharge, though
Waggoner & Hannon were not liable for discharging
him, and had a right to discharge him at any time, with
or without cause. But, on the other hand, if the defend-
ant had a right to do what it did, and in doing it term-
inated its contract with Waggoner & Hannon, thus
causing the latter to discharge the plaintiff, and he suf-
fered loss in consequence, then defendant is not liable,
though its action in terminating its contract was actu-
ated by malice towards plaintiff, and was intended to
injure him. In other words, if defendant had a right to

terminate its contract with Waggoner & Hannon at will, or for the cause assigned, and it did so terminate it, resulting in the discharge and injury of plaintiff, the defendant is not liable to plaintiff, no matter what motive impelled the act, provided the act itself was rightful.

The plaintiff was discharged on July 5th, and, as he and his witnesses claim, on account of the letters written by the defendant or its agents to his employes, Waggoner & Hannon. On the other hand, it is claimed by the defendant and its witnesses that plaintiff was discharged because the contract of his employers with the defendant was terminated by an agreement between the parties, and that Waggoner & Hannon had no further need of his, nor any other employe's, services. The defendant and Waggoner & Hannon both had a right to terminate their contractual relations, as they did, and by their so doing no legal right of the plaintiff was violated. These were questions for the jury, and any evidence tending to prove or to disprove these issues was relevant and admissible. The sawmill was never operated by Waggoner & Hannon after July 3d; the 4th of July being a holiday, and the 5th being the day the plaintiff was discharged. Waggoner & Hannon were not engaged in operating the mill on the day plaintiff was discharged, and never operated it thereafter, and it was solely in the business of operating this mill that plaintiff was employed. There is evidence to the effect that the mill was not operated on the 5th of July because there was no water available with which to operate it.

The error first insisted upon is that the court, over the objection of defendant, allowed plaintiff to prove that defendant (appellant) furnished the water to the sawmill, and that it had the water cut off on the 5th day of

[Tennessee Coal, Iron & Ry. Co. v. Kelly.]

July, for the purpose of causing the sawmill to shut down and preventing Waggoner & Hannon from operating it, to the end of encompassing the discharge of plaintiff and other of their employes objectionable to the defendant. This objection, we think, is well taken. Whether the defendant had a right to cut off this water from this mill, and whether it did it in order to shut down the mill, were questions which could not be litigated in this action. They were not made an issue by the pleadings, and we do not see that they could have been properly made an issue in this case.

It is conceded by plaintiff's counsel that plaintiff can claim no benefits in this action under any contract between defendant and Waggoner & Hannon for water supply; and the court charged the jury that plaintiff could recover nothing on account of defendant's breaking its contract with Waggoner & Hannon, and that, if defendant caused Waggoner & Hannon to shut down, plaintiff could recover nothing for being thrown out of employment on that account and this is conceded to be correct by plaintiff's counsel. And certainly, if defendant had a right to shut off the water, and exercised that right, then it violated no contract with any one; and plaintiff could not complain, even though defendant was actuated to do so by malice toward, and the desire to injure plaintiff—a clear case of damnum absque injuria. And whether the act in question was rightful or wrongful could not be litigated in this case. The evidence was clearly inadmissible for such purpose, and its direct tendency was to prejudice the jury against the defendant; hence we cannot say that it was without injury.

A part of the evidence was also objectionable for affording the plaintiff a vehicle for his opinions and conclusions as to matters upon which he was not shown to

be qualified or competent to state an opinion. If the evidence was admissible, he should have been required to state the facts, and let the jury draw the conclusions. Likewise was the evidence offered by plaintiff to prove that defendant had warned him to keep off its premises. The defendant had a right, so far as the evidence shows, to warn plaintiff to keep off its premises, with or without just cause. Of course, the plaintiff might not have been liable for going on the premises after warning not to do so, if he had just cause therefor; but the defendant had a right to warn him not to go thereon, solely because of its dislike toward him, or without any ground whatever.—*Ivey v. Pioneer*, 113 Ala. 349, 21 South. 351· Plaintiff was not a servant of the defendant, nor of Waggoner & Hannon, at the time of his warning. He was a third party and a stranger to both, and all this happened after the libel, if libel there was, and after he was discharged, and at a time when he had nothing whatever to do with either party. The only effect of this evidence was to prejudice the jury, and not to enlighten them. This necessarily raised the issue as to whether plaintiff had a right to go upon the premises after the warning, an issue immaterial and foreign to this case. It is true that some of the questions eliciting this testimony were not answered, and as to these, no injury was done; but all the evidence offered by both plaintiff and defendant, on this subject, should have been rejected.

There is no assignment of error as to the sufficiency of the counts attempting to charge libel. If any of these counts are sufficient to charge libel, or to support a judgment thereon, it is upon the theory that they charge special damages suffered in consequence of the publication of the alleged libelous letters on which they are based. Neither the letters as a whole, nor any part of them, are libelous per se; and consequently, in order to

state a cause of action, there must be alleged or shown some special damages suffered in consequence of the libelous publication—that is, the counts must allege or show something additional, in order to make the publication libelous. The letters do not charge the commission of a crime. They do not, in themselves, contain any matter which will authorize the court to presume, as matter of law, that they—all or either of them, or any part thereof—were intended to disgrace or to degrade the plaintiff, or to hold him up to public hatred, contempt, or ridicule, or to cause him to be shunned or avoided.

The charge that plaintiff had caused trouble at the mines, if this was charged, or that he had run negroes out of their houses, does not necessarily involve libel. The plaintiff may have been justified in such acts, or may have perpetrated them as a joke; and whether the writings are libelous per se is a question that, from the nature of the case and from the words used, must be presumed or determined by the court. The conduct that was charged in the letters might constitute a crime; but, either standing alone or taken in connection with all the letters, or with any parts of them, it does not constitute crime, and could not be characterized as libelous per se. Certain it is that, without the averments as to special damages suffered in his being discharged from his employment in consequence of this publication, these counts for libel would have stated no cause of action.

For these reasons we think the court erred in refusing defendant's requested charge No. 5. The letter referred to in the charge was certainly not libelous per se, and the defendant had the right to have the court so instruct the jury. The other charges were properly refused.

[Ganus & Co. v. Tew.]

As the case must be reversed, it is unnecessary to pass upon other questions raised on the appeal. The judgment of· the lower court is reversed, and the cause is remanded.

Reversed and remanded.

. DOWDELL, C. J., and SIMPSON and McCLELLAN, JJ., ·concur.