The plaintiff appeals from a summary judgment for the defendant. We reverse and remand.
On June 23, 1971 the plaintiff, Mrs. Mary K. Byars, filed her complaint against the Baptist Medical Centers, Inc., the pertinent portions of which follow:
 Plaintiff claims of the defendants the sum of Five Hundred Thousand Dollars ($500,000.00) as damages, for that, to-wit, eighteen years prior to June 21, 1971, the plaintiff was a registered nurse, working through the Nurses Official Registry, District One of The Alabama State Nurses Association. Plaintiff avers that the said Association through which she works assigns registered nurses to patient cases in the Birmingham, Alabama area whenever the patient or hospital or doctor requires or requests private duty nursing care. Plaintiff avers that the registered nurses working through the Nurses Official Registry are assigned to patient cases in various hospitals in the Birmingham, Alabama area on a preferential basis. When patients in hospitals located in the Birmingham, Alabama area wish private duty nursing care and contact the Nurses Official Registry, a registered nurse working through said Registry is given a preference or first right of refusal to that particular patient case if said nurse graduated from a nursing school sponsored by that particular hospital. Plaintiff avers that she is a graduate of The Baptist Hospitals Nursing School. Plaintiff avers that due to said preference, she has worked almost exclusively in The Baptist Medical Center — Montclair, from the date it opened, to-wit, December, 1966, until June 21, 1971.
 Plaintiff avers that on August 19, 1968, while she was engaged as a private duty nurse on the premises of The Baptist Medical Center — Montclair, a corporation, plaintiff slipped in some slippery substance that was being placed on the halls and corridors of said hospital. Plaintiff avers that as a result of said slip, she was seriously and permanently injured. Plaintiff avers that sometime thereafter, she filed a suit against the said hospitals, claiming that they had been negligent or careless in not maintaining their hallways in a reasonably safe condition for use by nurses and other business invitees . . . Plaintiff avers that on June 17, 1971, pursuant to said trial, a jury rendered a verdict in favor of the plaintiff, Mary K. Byars, and against the defendant Baptist Medical Center — Montclair, a corporation, in the amount of Twenty Thousand Dollars ($20,000.00).
 Plaintiff avers that the following Monday morning, she informed the Nurses Official Registry that she was ready, willing and able to take assignment of cases since she was now out of court. On this date, June 21, 1971, the plaintiff was informed by Corinne McDonald, who is the Director of the Nurses Official Registry, District One of The Alabama State Nurses Association, that The Baptist Medical Centers — Montclair and Princeton were refusing to allow Mrs. Byars to work in either of said hospitals. Plaintiff avers that the said defendant hospitals willfully, maliciously and wrongfully interfered with plaintiff's employment, trade or calling as a registered nurse in that said defendants prevented and continue to prevent plaintiff from going to either of said hospitals and rendering private duty nursing care to patients in said hospitals.
 Plaintiff avers that the refusal by both of the said defendants to allow plaintiff *Page 352 
to come upon their premises and engage in her employment in rendering private duty nursing care to patients in said hospitals is malicious, willful, and wrongful and is a direct result of the aforesaid lawsuit in which the plaintiff Mrs. Byars obtained a verdict in the amount of Twenty Thousand Dollars ($20,000.00) against The Baptist Medical Center — Montclair, a corporation.
 Plaintiff avers that as a proximate result of the said defendants wrongfully, willfully and maliciously interfering with plaintiff's employment, trade or calling as a registered nurse, plaintiff has been injured and damaged in that plaintiff has been caused to lose time from her work and to lose earnings from her said employment and plaintiff will be caused in the future to lose much time from her work and to lose large sums of money in the nature of earnings from her said employment which she would have received had she not been prevented, as aforesaid, from going to the said defendants' hospitals and engaging in her profession . . .
In his order granting summary judgment against Mrs. Byars, the trial court emphasized certain facts contained in depositions:
1. That the physician who appeared on her behalf in the earlier action testified that she had sustained a twenty-five per cent permanent partial back injury, and that the injury disabled her;
2. That Mr. Houtz, the administrator of Baptist Medical Center — Montclair (whose decision it was to bar Mrs. Byars from practicing private duty nursing in the hospitals) testified that Mrs. Byars had undergone a laminectomy, was experiencing "female problems," and was very obese;
3. That the defendant's position not to have the Nurses Registry send Mrs. Byars on private duty to the Baptist Medical Centers was because (in the opinion of Mr. Houtz) the plaintiff's disability rendered her unable to properly care for patients.
Citing Moore v. Andalusia Hospital, Inc., 284 Ala. 259,224 So.2d 617 (1969) and Harper v. Baptist Medical Center —Princeton, 341 So.2d 133 (Ala. 1976) as authority, the trial court concluded that as a private hospital (sic), the defendant might deny to the plaintiff the right to practice private duty nursing in its facilities.
The threshold issue on this appeal is whether the defendant may lawfully cause the plaintiff not to be referred by the Nurses Registry to patients being treated in the defendant's facilities who have need of private nursing care.
It appears that the earliest case in which our Court has recognized a malicious interference with a contract right as a justiciable claim was Tennessee Coal, Iron Ry. Co. v. Kelly,163 Ala. 348, 50 So. 1008 (1909). There the plaintiff had been employed as a carpenter by a partnership operating a sawmill upon the defendant's land. In certain correspondence with the plaintiff's employer the defendant made accusations which, he alleged, procured his discharge from the partnership's employ. In his action against the defendant the plaintiff claimed damages for wrongfully procuring his discharge and for libel. A judgment for the plaintiff was reversed on other grounds; however this Court recognized the plaintiff's cause of action for the interference:
 If the defendant without any lawful right, or by threats made not in the exercise of a lawful right, broke up the contractual relations existing between plaintiff and his employers, although such relations could have been terminated at the pleasure of his employers, with resultant damage to plaintiff, the defendant would be liable to him for the damages thus occasioned. . . .
 One of the rights incident to many, if not all, contracts is to be protected from malicious interference. A contract between master and servant is one of these contracts, though the contract of employment be at will, and though the master be free from liability in discharging the servant; yet if the discharge were wrongfully or maliciously procured by a third party, such third party is liable to the servant, and the motive with which the discharge was procured may, . . *Page 353 
determine the liability vel non, as well as go to the amount of damages. . . .
 It is a violation of a legal right to interfere with contractual relations recognized by law, if there be no sufficient justification or excuse for so doing. Losses thus willfully caused by another, from motives of malice, to one who seeks to exercise and enjoy the fruits and advantages of his own labor, or skill, will sustain an action. . . .
It is readily observable that Kelly and the principles it enunciated involved a situation in which employment existed. That is, the case did not involve a situation in which the defendant was alleged to have interfered with employmentopportunities. One of the cases cited for the last paragraph quoted above, however, Curran v. Galen, 152 N.Y. 33,46 N.E. 297 (1897), recognized that a cause of action might arise when one was prevented from obtaining employment as well as from taking away one's means of earning a livelihood by procuring his discharge from employment. That was the principle also applied in Carnes v. St. Paul Union Stockyards Co., 164 Minn. 457,205 N.W. 630 (1925). There a commission salesman brought an action against a stockyards company for preventing him from obtaining employment as a yard salesman with commission firms doing business at the yards. Citing the legal principle that "one who has been prevented from securing employment by reason of the wrongful and malicious interference of another may recover damages from the wrongdoer," that court added:
 It being the law that a man who has employment and is discharged by his employer solely by reason of the wrongful interference of another, sustains an injury for which the intermeddler is liable, it follows logically that a man who is prevented from obtaining employment by the wrongful interference of another may also recover damages from the intermeddler. There is no substantial difference between the loss of employment and the inability to secure employment when each is caused by the wrongful interference of a third person, for in each case the person injured is prevented from enjoying the fruits of his labor. 205 N.W. at 631.
The Minnesota Court characterized as a property right the means of gaining a livelihood, and recognized that an action would lie for a wrongful or malicious interference with that right, citing our own case of U.S. Fidelity Guaranty Co. v.Millonas, 206 Ala. 147, 89 So. 732 (1921).
The Millonas case, like Kelly, supra, concerned an interference by a third party with existing employment for which this Court allowed a recovery. The cases of Hill GroceryCo. v. Carroll, 223 Ala. 376, 136 So. 789 (1931); Evans v.Swaim, 245 Ala. 641, 18 So.2d 400 (1944), and Brotherhood ofLocomotive Firemen Enginemen v. Hammett, 273 Ala. 397,140 So.2d 832 (1962) are to the same effect. We have not been cited to nor has our research disclosed an Alabama case which deals with a wrongful interference with prospective, as opposed to existing, employment. We agree with the reasoning expressed inCarnes, supra, however that no substantial difference exists between wrongfully causing a loss of employment and wrongfully causing an inability to secure employment. In either case one is prevented from enjoying the benefits of the property right to earn a livelihood.
The cases relied upon by the defendant do not militate against the application of this principle to these facts.Messer v. City of Birmingham, 243 Ala. 520, 10 So.2d 760 (1942) and Camp v. Milam, 291 Ala. 12, 277 So.2d 95 (1973) are cited for the proposition that a license is a personal privilege to do an act upon another's land, and constituting such a character it is revocable at will by the landowner. Transposed to the facts of this case, the defendant argues that this principle would have allowed the hospital to deny to Mrs. Byars access to its facilities. Moreover, the defendant analogizes these facts to those contained in Hinrichs v. TranquilaireHospital, 352 So.2d 1130 (Ala. 1977). In the latter case this Court held that an employer might legally terminate an employee under a contract at will even though the employer's motives for such action were bad. *Page 354 
But this is not a case wherein Mrs. Byars is merely attempting to assert property rights in the premises of the defendant. Indeed, that argument, if ever asserted, has never prevailed in cases of this kind in which the cause of action sounds in tort for the alleged wrongful interference with the right to earn a livelihood rather than in an interference with an alleged interest in land. This is not a case in which Mrs. Byars was a person whose relationship as a user of the hospital premises was solely with the defendant. Her relationship to the defendant was based upon her membership in the Registry and through it to her prospective service to patients, and it is the defendant's alleged interference with that relationship, rather than any interference with proprietary rights, which is the gravamen of her action, even though, of course, that alleged interference ultimately would result in the denial of her use of the defendant's premises to pursue her employment with patients confined in those premises. The Messer and Camp
decisions, therefore, are inapplicable here.
Likewise, Hinrichs and Advance Industrial Security, Inc. v.Wm. J. Burns Int'l. Detective Agency, Inc., 377 F.2d 236 (5 Cir. 1967) is inappropriate. This is not a case of an employer terminating an employee under a contract at will. Nothing contained in the Hinrichs' decision obviated consideration of a third party's interference with prospective employment. InAdvance, supra, the court was dealing with the allegation of an employment contract in being which was void, not with prospective employment contracts. That is a sufficient response, as well, to the citation of Twine v. Liberty NationalLife Ins. Co., 294 Ala. 43, 311 So.2d 299 (1975) which recites the general rule that a stranger to a contract cannot maintain an action for its breach, for as we have stated, the cause of action in question here sounds in tort rather than in contract.
Moore v. Andalusia Hospital, Inc., supra, upon which the trial court relied, is, perhaps, a closer analogy, but neither its facts nor the legal principle applicable to its facts furnish the solution to this case. In Moore, a private hospital corporation refused to allow a practicing physician the privilege of serving on its medical staff and thus denied his patients the use of the hospital. This Court upheld the right of the corporation's action:
 Being a private corporation, the appointment of members of the medical staff was solely within the discretion of the Board of Directors, and the refusal of the Board of Directors to appoint a particular physician or surgeon to the medical staff of the hospital is not subject to judicial review. . . . 284 Ala. at 262, 224 So.2d at 619.
The distinction between Moore and the present case is obvious. Mrs. Byars has based her action upon the defendant's refusal to allow the Nurses Registry to place her in the employ of patients who have expressed the desire to employ a private nurse. Mrs. Byars' employment relationship, in any such instances, would be with the assent of the patient whom she served, even at the patient's will, but not with the hospital. What this Court decided in Moore was that a private hospital possessed the discretion not to enter into a continuing professional relationship with a physician. The opinion did not deal with whether or not a patient admitted to such a hospital has the right to contractually engage the services of a private duty nurse who is professionally qualified to serve in that capacity.
The trial court also relied upon Harper v. Baptist MedicalCenter — Princeton, supra, because "a patient may be denied the right to be admitted by a private hospital." Whether that is a universally accepted proposition of law we need not decide. It is clear in any case that such a principle was not in issue in Harper, for the opinion proceeded upon the factual premise that the plaintiff was not accepted, and his not having been accepted, the opinion dealt with the duty owed to him when he was not a patient. Had Harper dealt with the rights of one who has been admitted as a patient, such as the right to employ a private duty *Page 355 
nurse of the patient's choosing, then it would be authority in the instant case. Because it did not involve any such facts, it cannot control the issue here.
Summary judgment is proper only in the absence of a genuine issue of material fact. First Nat. Bank of Birmingham v.Culberson, 342 So.2d 347 (Ala. 1977); Rule 56 (e), ARCP; 6Moore's Fed. Prac., par. 56.15 (2nd ed. 1971). In this case the plaintiff has alleged that the defendant's conduct against her was prompted by her recovery of a money judgment against it. The defendant maintains that its refusal to allow her to serve patients in its hospitals was due to her physical inability to serve patients. The record as a whole contains evidence supporting the inference that the defendant's conduct resulted solely from the exercise by the plaintiff of her legal right to seek recompense for negligent injury. She testified by deposition that she went back to work when her doctor released her following that injury, and that the injuries she had received in her earlier fall did not affect her ability to perform her nursing duties. "I performed my duties exactly after my surgery as I did before," she stated, although she did have some periodic pain which got better, and she had very little pain in her back. Between the time she began working again after her accident and the time she was barred from the Medical Centers she worked exclusively at the Medical Center-Montclair. The evidence shows that following her doctor's release she was allowed to practice her profession in the Center until four days after the jury verdict in her favor.
Her position is supported by the deposition of Mr. Robert Schooley for whom the plaintiff was a special nurse at Baptist-Montclair hospital in 1972 (after her accident) for approximately one week. He observed nothing physical which prevented her from performing her duties as a nurse, although he did not notice whether she was required to pick up anything that had weight to it. Mrs. Schooley also testified by deposition. Recovering from a hysterectomy performed at Baptist-Montclair hospital in 1970 (after Mrs. Byars' accident) she had private nurses twenty-four hours each day for two and a half weeks. Mrs. Byars was one of these and worked the 7:00 to 3:00 shift seven days a week for that period. She was not ambulatory during the first part of her recovery, but never noticed that Mrs. Byars had any physical problems while ministering to her.
For the defendant, Mr. Duane Houtz deposed that he was a witness in the trial of the case brought by Mrs. Byars against Baptist Medical Center. Following the conclusion of the Byars' case, Mrs. Bishop, the Director of Nursing, informed him that she had received a communication from the [Nurses] Registry in regard to Mrs. Byars' desire to do nursing work, and he advised her that it would not be in the best interest of the patient, based upon his week of observing Mrs. Byars at the trial, and in view of her disability. Indeed, he testified that his "primary decision was based upon seeing her physical condition at the time of the trial," although he acknowledged having received complaints about her talkativeness, her claim to have a twenty-five per cent disability, her overweight condition, and her difficult working relationship with the staff. In making his decision not to allow the plaintiff access to the Center's patients he did not check with any of the doctors for whose patients she was a special nurse, nor did he ever have any complaints from any of those doctors.
When the trial court granted summary judgment in favor of the defendant, the effect of his judgment was to pronounce that the defendant was entitled to bar the plaintiff from serving the Center's patients as a matter of law. But the defendant's right to interpose with the Nurses Registry to preclude the plaintiff's prospective service was not absolute. As this Court stated in Kelly, supra:
 If one does an act which is legal in itself and violates no right of another, the fact that this rightful act is done from bad motives or with bad intent . . . does not give . . . a right of action. . . . *Page 356 
Under this test, if the defendant's act was not illegal, but wrongful and malicious as the plaintiff claims, a cause of action for wrongful interference would lie. If it is true that the defendant's conduct was based upon a negative assessment of the plaintiff's physical ability to perform her nursing duties, the defendant's conduct would not be actionable, for the hospital would have a legal right to establish, publish and apply reasonable standards of fitness, including physical fitness, for private duty nurses. If, on the other hand, the defendant's conduct was based upon the successful exercise by the plaintiff of her legal right to seek redress in the courts for injury due to the defendant's negligence, that conduct would not justify the interference with plaintiff's future employment opportunities with defendant's patients, but would violate her right as one qualified under the Nurses Registry to be referred to patients seeking her services. Under the pleadings and the evidence, whether or not the defendant's conduct was legal in itself and violated no right of the plaintiff was a genuine issue of material fact, therefore summary judgment was inappropriate. For this reason that judgment must be reversed and the cause remanded, and it is so ordered.
REVERSED AND REMANDED.
FAULKNER, JONES, ALMON, SHORES and EMBRY, JJ., concur.
TORBERT, C.J., and BLOODWORTH and MADDOX, JJ., concur specially.