This is an appeal from a summary judgment entered in favor of Central Bank of the South on claims by the appellants, Cahaba Seafood, Inc., and Tom and Frances Greenhalgh, for damages based on alleged intentional interference with business relations, fraud and misrepresentation, negligence and/or wantonness, and economic duress. The plaintiffs had also alleged breach of contract; however, that claim is still pending before the trial court. With regard to the claims pertinent to this appeal, the trial judge certified the judgment final pursuant to Rule 54(b), A.R.Civ.P. We affirm.
Tom and Frances Greenhalgh moved to Birmingham with the intention of opening a retail and wholesale seafood business. In order to finance their business venture, they formed a corporation, Cahaba Seafood, Inc., and sought a construction loan for their new building. Originally, they obtained a loan from National Bank of Commerce; however, they eventually borrowed $275,000 through Central Bank and the Small Business Administration to pay off their loan at National Bank and to meet the cost overruns of their building. Thereafter, Cahaba Seafood sought a line of credit from Central Bank in order to set up and maintain working capital for the new business. A line of credit was established with the following pertinent provisions:
"II. AMOUNT $25,000 Line of Credit
". . . .
 "VI. OTHER: The bank will advance up to 80 percent of accounts receivable of the business. Copies of invoices will be furnished on a weekly basis. While it is recognized that your business is operated without the benefit of contracts, we will require that the Wynfrey [Hotel] or any other purchaser that pays on weekly terms or longer make payments for those invoices directly to Central Bank."
Central Bank contends that $25,000 was the maximum line of credit offered by it and that it had agreed to lend an amount totalling up to 80 percent of the accounts receivable until the loan reached the $25,000 limit. Plaintiffs, however, contend that the agreement provided for a $25,000 credit line and that, in addition, Central Bank was to lend an amount equal to up to 80 percent *Page 1306 
of the accounts receivable. Furthermore, the plaintiffs argue that the Wynfrey Hotel should have been allowed to make 30-day payments under the "weekly terms or longer" provision of the contract instead of being forced to pay on a weekly basis as required by Central Bank.
First, the plaintiffs argue that the summary judgment should not have been entered as to their claim alleging intentional interference with business relations. We have written:
 "Pursuant to our recent decision in Gross v. Lowder Realty, 494 So.2d 590 (Ala. 1986), a prima facie case of intentional interference with business or contractual relations requires proof of the following elements: (1) The existence of a contract or business relation; (2) defendant's knowledge of the contract or business relation; (3) intentional interference by the defendant with the contract or business relation; and (4) damage to the plaintiff as a result of defendant's interference. However, defendant has an opportunity to prove justification as an affirmative defense to plaintiff's claim."
Lowder Realty, Inc. v. Odom, 495 So.2d 23, 25 (Ala. 1986). In the case at bar, there is a dispute over the proper interpretation of the contract between Central Bank and the plaintiffs. The plaintiffs' intentional interference claim involves an alleged breach of contract on the part of Central Bank that happened to affect their relationship with the Wynfrey Hotel. The tort of intentional interference with business relations was intended to provide a remedy for situations where a third party intentionally interferes with the relationship of two contracting parties, not as a remedy for situations where an allegedly breached contract between two parties (here the plaintiffs and Central Bank) affects the relationship of one of the parties with a third party. In the case sub judice, the plaintiffs filed an action for breach of contract, which would be a remedy for the alleged wrong committed by Central Bank. If Central Bank is found to have breached that contract, then the money lost with regard to the Wynfrey account would be part of the potential damages to which the plaintiffs would be entitled. Summary judgment was proper with regard to the claim of intentional interference with business relations.
Second, the plaintiffs contend that the trial judge erred in entering the summary judgment as to their claim alleging fraud and misrepresentation. We disagree. There is nothing in the record that indicates that, when the contract was entered into between the parties, Central Bank intended not to honor the contract in full. Because the agreement entered into by the parties concerned future acts to be performed by Central Bank, i.e., disbursement of funds to Cahaba Seafood, it was incumbent on the plaintiffs to provide some evidence that the bank, at the time it made the contract, did not intend to honor it. SeeH.C. Schmieding Produce Co. v. Cagle, 529 So.2d 243, 249
(Ala. 1988). The plaintiffs have made no offer of evidence to show that Central Bank intended to deceive them when the agreement was entered into by the parties. Therefore, the summary judgment was also proper as to this claim.
Third, the plaintiffs argue that the trial judge should not have entered the summary judgment as to their claim alleging economic duress. As pointed out by Central Bank in its brief, we have heretofore refused to recognize economic duress as an independent tort. We reaffirm that refusal. See Guillot v.Beltone Electronics Corp., 540 So.2d 648 (Ala. 1988).
Finally, the plaintiffs contend that the summary judgment was improper as to their claim of wantonness and/or negligence. Again, we disagree; we find that Central Bank owed no duty to Cahaba Seafood outside the confines of the agreement. Central Bank was under no additional obligation to help Cahaba Seafood to extricate itself from its financial difficulties.
For the foregoing reasons, the summary judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON and STEAGALL, JJ., concur. *Page 1307