**Larry G. DIEFENDERFER, Plaintiff,**

v.

**FORD MOTOR COMPANY,
et al., Defendants.**

**Civil Action No. 95–D–252–S.**

United States District Court,
M.D. Alabama,
Southern Division.

Dec. 29, 1995.

Joe C. Cassady, Enterprise, AL, for plaintiff.

Karen N. Herrod, Montgomery, AL, John H. Fleming, Atlanta, GA, for defendants.

## MEMORANDUM OPINION

DE MENT, District Judge.

Before the court is the defendants' motion for summary judgment filed July 24, 1995. The defendants contemporaneously filed a brief and evidence in support of their motion. The plaintiff responded in opposition on August 22, 1995, to which the defendants replied on September 12, 1995. After careful consideration of the arguments of counsel, the relevant case law and the record as a whole, the court finds that the defendants' motion for summary judgment is due to be granted.

### JURISDICTION AND VENUE

This court has jurisdiction over this action pursuant to 28 U.S.C. § 1441 (removal jurisdiction) and 28 U.S.C. § 1332 (diversity-of-citizenship jurisdiction). Diversity jurisdiction is proper because complete diversity exists between the parties and the amount in controversy exceeds $50,000, exclusive of interest and costs. Personal jurisdiction and venue are uncontested.

### FINDINGS OF FACT

Construing the evidence in the light most favorable to the plaintiff, the court finds the following facts controlling in this action:

Plaintiff Larry G. Diefenderfer ("plaintiff") challenges his employment termination as unlawful and predicates liability under the legal theories of intentional and negligent infliction of emotional distress (Count I) and tortious interference with contract or business relations (Count II). The plaintiff also asserts a conspiracy claim (Count III), which is based on the underlying torts alleged in Counts I and II of the complaint. The plaintiff prays for compensatory and punitive damages and demands a jury trial.

On May 12, 1994, the plaintiff was hired as a Dealer Sales Representative for TranSouth Financial Corporation ("TranSouth") at its Auburn, Alabama branch office. A month later, on May 12, 1994, TranSouth fired the plaintiff. TranSouth is a subsidiary of defendants Ford Motor Company, Associates First Capital Corporation ("Associates First"), and

Associates Corporation of North America. Associates First, which is part of Ford's Financial Services Group, acts as a holding company for TranSouth and several other companies that operate under the trade name of "The Associates." The Associates, also named as a defendant in this action, extend consumer loans for automobiles and residential mortgages, and have available commercial loans.

In 1991, the Financial Services Group adopted a policy that an individual who has been terminated by one of its companies may not later be hired by an affiliate. Before working at TranSouth, the plaintiff was employed from 1973 to 1990 by Ford Motor Credit Company, an affiliate company within the Financial Services Group. Ford Motor Credit Company fired the plaintiff, asserting that he violated company policy when he sold his personal vehicle through a Ford dealership in Montgomery, Alabama. The plaintiff denies that such a policy existed and further asserts that other employees routinely sold their vehicles through Ford's dealerships. *See* Pl.'s Br. Opp. Summ. J. (Edward Gregory's Aff., attached thereto). After his termination, the plaintiff filed an unemployment compensation claim. Despite Ford Credit Motor Company's objections, the plaintiff eventually received unemployment benefits.

After working for a number of employers for nearly four years, the plaintiff sought a job with TranSouth and talked with its president, Dennis Craft ("Mr. Craft"). The plaintiff asserts that he informed Mr. Craft of his previous employment with Ford Motor Credit Company and of the reasons underlying his termination. Mr. Craft denies that the plaintiff told him this information and asserts that had he known that the plaintiff previously had been fired by Ford Credit Motor Company, he would not have hired the plaintiff.

Before hiring the plaintiff, TranSouth did not follow the proper procedures for verifying his prior employment with Ford Motor Company. Thus, no one at TranSouth discovered that the plaintiff previously had been terminated. Shortly after the plaintiff was hired, news traveled through the corporate "grapevine" that the plaintiff was employed with TranSouth despite his previous

termination with an affiliate company within the Financial Services Group. Thereafter, discussions regarding the plaintiff's employment ensued between an employee relations manager in the Financial Services Group, the executive vice-president of Associates Corporation of North America, Mr. Craft and several other TranSouth executives. These discussions culminated with a decision to terminate the plaintiff's employment. The plaintiff asserts that as a result of the defendants' actions, he has been unable to find employment with comparable pay and benefits and has suffered from fits of sleeplessness.

## SUMMARY JUDGMENT STANDARD

■ On a motion for summary judgment, the court is to construe the evidence and factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court has stated:

> [T]he plain language of Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ In further elaboration on the summary judgment standard, the court has said that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty*

*Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (citations omitted). Summary judgment is improper "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. *See Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

## DISCUSSION

The defendants have moved for summary judgment on all claims asserted in the complaint. For organizational purposes, the court will address each claim in turn.

### I. Intentional Interference with Contractual or Business Relations

■ The plaintiff alleges that under Alabama law, the defendants intentionally and wrongfully interfered with his employment relationship with TranSouth by causing his termination. The tort of intentional interference with contractual or business relations "provide[s] a remedy for situations where a third party intentionally interferes with the relationship of two contracting parties[.]" *Cahaba Seafood, Inc. v. Central Bank of the South,* 567 So.2d 1304, 1306 (Ala.1990). In other words, "a party to a contract or to a business relationship cannot be liable for tortious interference with that contract or business relationship." *Watters v. Lawrence County,* 551 So.2d 1011, 1013 (Ala.1989) (citations omitted); *see also Lolley v. Howell,* 504 So.2d 253 (Ala.1987).

Hence, where a defendant is a subsidiary or affiliate company of the plaintiff's employer, it may attempt to deny liability on the ground that it is a party to the employment relationship with which a plaintiff claims interference. Here, however, the defendants have not made this argument, and the parties do not dispute the separateness of the various corporate entities within Ford Motor Company. *See Creel v. Davis,* 544 So.2d 145, 147 (Ala.1989); *Oxford Furniture Cos. v. Drexel Heritage Furnishings, Inc.,* 984 F.2d 1118, 1126 (11th Cir.1993). The court, thus,

need not decide the issue and will assume that the defendants are not immune from liability for the intentional tort of interference with contractual or business relations.

■ To succeed on this claim, the plaintiff must show the following: "(1) The existence of a contract or business relation; (2) Defendant's knowledge of the contract or business relation; (3) Intentional interference by the defendant with the contract or business relation; ... and [ (4) ] Damage to the plaintiff as a result of defendant's interference." *Gross v. Lowder Realty Better Homes & Gardens,* 494 So.2d 590, 597 (Ala.1986) (internal footnotes omitted) (setting forth a new rule of law in Alabama). *See also Chrysler Capital Corp. v. Lavender,* 934 F.2d 290, 294 (11th Cir.1991). It is undisputed that the plaintiff had an employment relationship with TranSouth and that the defendants knew of the existence of the relationship. Based upon the conversations between TranSouth executives and the defendants' agents, one also can logically infer that the defendants interfered with that employment relationship. Furthermore, the plaintiff has claimed emotional anguish and monetary damages allegedly caused by the defendants.

Hence, the dispositive issues in this case are whether the defendants' interference was "intentional" and "justified" within the meaning of *Gross.* The defendants argue that "intentional" conduct requires proof that their interference was malicious, wrongful and willful. The defendants cite as authority *Wadsworth v. Nalco Chem. Co.,* 523 F.Supp. 997, 999 (N.D.Ala.1981), *aff'd without op.,* 679 F.2d 251 (11th Cir.1982). The court disagrees with the defendants' argument.

■ Prior to *Gross, supra,* the courts incorporated an element of malice into the plaintiff's prima facie case. Alabama cases interpreting *Gross,* however, have eliminated the malice requirement except in the limited situation where the plaintiff seeks to hold an agent or employee of his or her former employer liable for the tort of intentional interference with contractual or business relations.[1] *Creel,* 544 So.2d at 148. The *Creel*

---

1. Malice also must be proven in order to recover punitive damages. *Gross,* 494 So.2d at 597 n. 4

court noted that where a plaintiff sues a party not privy to the contractual or business relationship, as here, proof of malice inappropriately would redefine the tort of " 'intentional interference" ' as one of " 'malicious interference.' " *Id.; see also Hickman v. Winston County Hosp. Bd.,* 508 So.2d 237, 239 (Ala.1987) (holding that officers or employees of a plaintiff's former employer may be individually liable for intentional interference if they "were acting outside their scope of employment and were acting with actual malice") (citations omitted). Such is not the case here, as the plaintiff has not sued any individuals, only corporations. Also, as already stated, the court does not consider the defendants to be parties to the employment relationship.

Here, the court finds that the plaintiff has proven "intentional" conduct, because the defendants knew that in enforcing their policy, the plaintiff's employment with TranSouth would end. *See Hennessey v. National Collegiate Athletic Ass'n,* 564 F.2d 1136 (5th Cir.1977). In so finding, the court is not suggesting that the defendants acted with malice. In fact, the court need not and declines to express an opinion in this regard.

■ The defendants next contend that even if the plaintiff has established a prima facie case, their actions were justified as a matter of law. "[J]ustification is an affirmative defense to be pleaded and proved by the defendant. Whether the defendant is justified in his [or her] interference is generally a question to be resolved by the trier of fact." *Gross,* 494 So.2d at 597 n. 3 (citation omitted) (brackets supplied). The court went on to explain as follows:

> Whether a defendant's interference is justified depends upon a balancing of the importance of the objective of the interference against the importance of the interest interfered with, taking into account the surrounding circumstances. *Restatement (Second) of Torts* § 767 (1979), and Comments. The restatement utilizes the term "improper" to describe actionable conduct by a defendant. Non-justification is synonymous with "improper." If a defen-

(citation omitted).

dant's interference is unjustified under the circumstances of the case, it is improper. The converse is also true.

*Id.* While the "absence of justification" generally is a question of fact, courts have ruled on this issue as a matter of law. *Dunnivant v. Bi-State Auto Parts,* 851 F.2d 1575, 1583–84 (11th Cir.1988) (affirming summary judgment in favor of the defendant on the ground that the interference was justified); *Bama Budweiser v. Anheuser-Busch, Inc.,* 611 So.2d 238, 247 (Ala.1992) (same); *Elgin v. Montgomery County Farm Bureau,* 549 So.2d 486, 488–89 (Ala.1989) (same).

Before analyzing the justification issue, the court stresses that whether the plaintiff violated a policy in 1990 that caused Ford Credit Motor Company to fire him and whether such a policy even existed are irrelevant to this action. The plaintiff focuses much of his argument on these points and has submitted affidavits in support thereof. Ford Credit Motor Company, however, is not a party to this lawsuit, and the propriety of its decision is not at issue here. The proper means to challenge Ford Credit Motor Company's decision to fire him in 1990 is by filing a claim for wrongful termination. *See Wright v. Dothan Chrysler Plymouth Dodge, Inc.,* 658 So.2d 428 (Ala.1995); *Dykes v. Lane Trucking, Inc.,* 652 So.2d 248 (Ala.1994). The plaintiff cannot convert this case into a proxy for a wrongful termination action against Ford Credit Motor Company. Instead, the court must focus on whether the defendants tortiously interfered without justification with the plaintiff and TranSouth's employment relationship.

The plaintiff asserts that the defendants acted improperly and without justification because the defendants' reasons for firing him were purely to "save face for their own failure to carry out their avowed policy in determining whether to rehire a former employee of an affiliate company." Pl.'s Br. Opp.Summ.J. at 2–3. To support his assertion, the plaintiff submits evidence that the executive vice president of Associates North America was "quite upset that there had been a breakdown" in the rehiring policy. Alderman's Dep. at 114. The plaintiff like-

wise has proffered evidence that TranSouth was satisfied with his work and had no objections to the plaintiff's continuing employment with TranSouth. Even accepting these allegations as true, the court finds that the evidence is insufficient to create a genuine issue of material fact.

In *Finley v. Beverly Enterprises, Inc.,* 499 So.2d 1366 (Ala.1986), the plaintiff worked as a nurse's aide at one of the defendant's nursing home facilities. The defendant fired the plaintiff as a nurse's aide. The plaintiff, however, continued to work as a private duty nurse for a patient at the defendant's nursing home pursuant to an agreement between her and the patient's daughter. The defendant informed the plaintiff of its policy that discharged employees may not work as private duty nurses at its facility and told her that she could no longer work there. The plaintiff filed a lawsuit, alleging that the defendant interfered with her work as a private duty nurse. The Supreme Court of Alabama affirmed the trial court's directed verdict in favor of the defendant and held that the plaintiff "ha[d] not produced a scintilla of evidence to show that there was no justification for [the defendant's] policy that discharged employees may not renter the premises to work as private duty nurses." *Id.* at 1368 (brackets supplied). In reaching its decision, the Supreme Court stated that it had "reviewed the facts of th[e] case and applied the rule announced" in *Gross. Id.*

The court likewise finds that the defendants here were motivated by legitimate and proper interests in establishing a policy that prevents a member of the Financial Services Group from employing someone who previously had been terminated by another member company. According to the defendants, this policy and practice, which has been in effect since 1991, protects the integrity of Ford Motor Company and prevents pirating of employees among the affiliates. The court can find nothing improper with a family of corporations agreeing on personnel policies and then acting in accordance with such policies. The plaintiff simply has not presented evidence to show that the defendants' purpose in enforcing the policy was other than to protect the legitimate business interests of Ford Motor Company. For example, there is no evidence that the defendants did not evenly apply the policy to similarly-situated individuals. *Finley,* 499 So.2d at 1367 (finding no evidence that the defendant's enforcement of its policy "singled out" the plaintiff "for treatment different from that accorded other discharged employees").

Moreover, other courts with tortious interference laws similar to Alabama's have concluded that a parent corporation is justified in intervening in the business relationships of its subsidiaries, when the parent does so to protect its own interests, as well as the interests of its subsidiaries. *See Deauville Corp. v. Federated Dep't Stores, Inc.,* 756 F.2d 1183, 1196–97 (5th Cir.1985); *Advent Sys. Ltd. v. Unisys Corp.,* 925 F.2d 670, 673 (3rd Cir.1991); *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.,* 862 F.2d 597, 601 (6th Cir.1988). Finally, the court recognizes that the defendants' conduct would be actionable if taken in retaliation against the plaintiff for filing an unemployment compensation claim after being fired in 1990. *Byars v. Baptist Medical Ctrs., Inc.,* 361 So.2d 350, 356 (Ala.1978). The plaintiff, however, has presented *no evidence* that his legal claim prompted the defendants' actions, which caused the plaintiff's termination from TranSouth in 1994. In fact, the plaintiff has not even raised this argument in his briefs submitted to the court. Accordingly, the court finds that summary judgment is due to be granted as to the plaintiff's claim for tortious interference with contractual or business relations.

## II. Negligent and Intentional Infliction of Emotional Distress

The plaintiff alleges that the defendants negligently and intentionally inflicted emotional distress upon him by causing his discharge from TranSouth. No cause of action exists under Alabama law for negligent infliction of emotional distress. *Gideon v. Norfolk Southern Corp.,* 633 So.2d 453, 453–54 (Ala.1994). Hence, the defendants are entitled to summary judgment on any claim that they negligently inflicted emotional distress upon the plaintiff.

As to intentional infliction of emotional distress (also known as the tort of outrage), the Supreme Court of Alabama has restricted the confines of this tort, allowing for recovery "only in the most egregious circumstances." *Thomas v. BSE Indus. Contractors, Inc.*, 624 So.2d 1041, 1044 (Ala. 1993). To raise a jury issue on a claim for outrage, "the plaintiff must present sufficient evidence that the defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Id.* at 1043 (citing *American Road Service Co. v. Inmon*, 394 So.2d 361 (Ala.1980)). The Supreme Court of Alabama has stated that "[b]y extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Inmon*, 394 So.2d at 365.

Moreover, after citing more than twenty cases where a tort of outrage claim was not actionable, the court in *Thomas* outlined three limited circumstances where Alabama courts have allowed this claim to go to the jury:

> (1) cases having to do with wrongful conduct in the context of family burials, *see Whitt v. Hulsey*, 519 So.2d 901 (Ala.1987) (reckless desecration of family burial ground by adjacent landowner sufficient to present a jury question as to claim of outrage), *Levite Undertakers Co v. Griggs*, 495 So.2d 63 (Ala.1986) (defendant undertaker's wrongful retention of the remains of plaintiff's husband to force payment of funeral expenses sufficient to present a jury question as to claim of outrage), and *Cates v. Taylor*, 428 So.2d 637 (Ala.1983) (defendant's withdrawal of permission to use a burial plot 30 minutes before the planned burial sufficient to present a jury question on claim of outrage); (2) a case where insurance agents employed heavy-handed barbaric means in attempting to coerce the insured into settling an insurance claim, *National Security Fire & Cas. Co. v. Bowen*, 447 So.2d 133 (Ala.1983); and (3) a case involving egregious sexual

harassment, *Busby v. Truswal Systems Corp.*, 551 So.2d 322 (Ala.1989).

*Thomas*, 624 So.2d at 1044.

Here, the plaintiff has not provided the court with evidence sufficient to rise to the level of the tort of outrage. In finding that the defendants were justified in firing the plaintiff, the court similarly finds that the actions of the defendants are neither egregious or so poignant as to "go beyond all possible bounds of decency." *Inmon*, 394 So.2d at 365. Moreover, the plaintiff has not suffered the severe emotional or mental distress required of an outrage claim: "[T]he emotional distress suffered must be so severe that no reasonable person could be expected to endure it." *Id.* at 365. The only symptom of distress that the plaintiff can identify is that he has had difficulty sleeping since he lost his job with TranSouth. Pl.'s Dep. at 260–261. According to the plaintiff, he wakes up at night worrying about financial insecurity. *Id.* at 267. The plaintiff has no other physical manifestations of distress. *Id.* at 269.

While the court emphathizes with the plaintiff, the court finds that sleeplessness caused by concern over one's financial future simply is insufficient to state a claim for the tort of outrage. Indeed, courts have repeatedly held that "distress" comparable to that alleged by the plaintiff is not actionable. For example, in *State Farm Automobile Insurance Co. v. Morris*, 612 So.2d 440, 445 (Ala.1993), the plaintiff could not recover under the tort of outrage for sleeplessness and worries about her financial condition. Similarly, in *U.S.A. Oil, Inc. v. Smith*, 415 So.2d 1098, 1100–01 (Ala.Civ.App.), *cert. denied* 415 So.2d 1102 (Ala.1982), evidence that the plaintiff could not sleep, was upset, and cried often, also was not severe enough to support an outrage claim. *See also Thomas*, 624 So.2d at 1045–46 (holding that a worker's fear that he would contract cancer because of his exposure to asbestos was insufficient to state a claim for outrage). Accordingly, the court finds that the defendants' motion for summary judgment as to the outrage claim is due to be granted.

### III. Conspiracy

The plaintiff also seeks relief from the defendants for an alleged conspiracy. Specifically, the plaintiff alleges that the defendants conspired to cause his termination from TranSouth and conspired to inflict emotional distress upon him. Under Alabama law, a conspiracy itself furnishes no cause of action. *Massengill v. Malone Freight Lines, Inc.*, 538 So.2d 784, 787 (Ala. 1988). In other words, there must be an "actionable wrong" underlying the conspiracy claim. *Griese–Traylor Corp. v. First Nat'l Bank*, 572 F.2d 1039, 1045 (5th Cir.1978).

Because the court has found that summary judgment in favor of the defendants is due to be granted as to the plaintiff's tortious interference and emotional distress claims, the conspiracy claim also must fail. *Betts v. McDonald's Corp.*, 567 So.2d 1252, 1255 (Ala. 1990). Accordingly, the court finds that summary judgment is due to be granted as to the plaintiff's conspiracy claim.

### CONCLUSION

For the foregoing reasons, the court finds that the plaintiff has failed to assert a viable claim for intentional interference with contractual or business relations (Count I), intentional and negligent infliction of emotional distress (Count II), and conspiracy (Count III). Accordingly, the defendants' motion for summary judgment is due to be granted.

A judgment in accordance with this memorandum opinion shall be entered separately.

DONE.