Gwenetta L. Garvin appeals to this Court for a reversal of a summary judgment entered in favor of defendants V.A. Shewbart, CNA Insurance Companies, a corporation, and Jr. Food Stores of West Florida, Inc. (collectively referred to as "CNA"), on her complaint alleging fraud and the tort of outrageous conduct. This action derives from an injury to her back that Garvin suffered at her workplace in 1981. Garvin filed a workmen's compensation claim that was upheld in Jr. Food Stores of WestFlorida, Inc. v. Garvin, 447 So.2d 794 (Ala.Civ.App. 1984). She also filed an outrage claim, prior to the one at issue here, and the dismissal of that claim was reversed in Garvin v.Shewbart, 442 So.2d 80 (Ala. 1983).[1] In March 1985 she entered into a settlement whereby she accepted a lump-sum payment of workmen's compensation benefits and dismissed her then-pending claim of outrage and CNA agreed to continue to pay her authorized medical expenses. She now claims that CNA had no intention of continuing to pay her medical expenses and that, after the settlement, CNA engaged in outrageous conduct in regard to her attempts to obtain further medical treatment of her injury.
Shortly after Garvin's injury, two surgical operations were performed on her back. As early as August 1983 it became apparent that Garvin would need a third operation to remove a bone chip from her back. See Jr. Food Stores, supra, at 794. The neurosurgeon who had performed the first two operations, Dr. Eyster, recommended the third operation, but, in May or June 1984, she went to another doctor, Dr. Hackman, for a second opinion. CNA refused to pay for any examinations or treatment by Dr. Hackman, but insisted on its right, pursuant to Ala. Code 1975, § 25-5-77, to select a physician. On July 10, 1984, CNA authorized Garvin to see Dr. Barnes, an orthopedic specialist. CNA later made her an appointment with Dr. Barnes for late July or early August and informed her that *Page 430 
he would be the only authorized treating physician. When she arrived for that appointment, however, Dr. Barnes refused to examine her without first obtaining her medical records.
Her attorney from that period, Allen Edward Cook, executed an affidavit and attached his correspondence with CNA regarding her attempts to obtain a second opinion and further treatment. In a letter of December 5, 1984, Cook related that, during Garvin's visit to Dr. Barnes in August, Dr. Barnes's office had telephoned CNA to obtain her medical records and that CNA had promised to send them. That letter continued:
 "Dr. Barnes will not see Gwen [Garvin] again until he has the records. Gwen has a great deal of trouble with her back and she needs to see Dr. Barnes. She does not have the records nor does she have the money with which to purchase the records from Dr. Eyster and West Florida Hospital.
 "If [CNA] does not take the necessary steps for Gwen to see Dr. Barnes and to be treated by him, if need be, then we are going to assume that [CNA] does not intend for her to use Dr. Barnes and we will select a specialist of our choice and we will expect [CNA] to pay for his treatment of Gwen."
Garvin continued to try to see Dr. Barnes, who continued to tell her that he did not have her records. Her attorney continued to correspond with CNA, which asserted that it had sent the records to Dr. Barnes and continued to insist on her seeing him. Shewbart wrote the following letter to Cook on July 25, 1985:
 "I have been attempting to resolve your letter of 7/1/85. I continue to talk to Dr. Barnes' office and they indicate that they are not refusing to treat her. We would like for you to make one more attempt to see Dr. Barnes, and if this is not successful, we will work with you to try to select a doctor that will be beneficial to Ms. Garvin."
On August 19, Cook responded by saying that Garvin had continued to talk to people in Dr. Barnes's office, and that they had told her "that they did not know when Dr. Barnes would be able to see her." Cook requested that another doctor be selected for Garvin to see.
On October 21, 1985, Shewbart responded with the statement that CNA had selected Dr. G. Robert Burton. When Garvin saw Dr. Burton, he told her that he did not do back surgery. There is also some evidence that, during this time, CNA stopped paying for prescription medications that Garvin was taking due to her back injury. In November, Cook withdrew as her attorney, advising her that he might be needed as a witness if she had to file suit against CNA again. After further unsuccessful attempts to obtain authorized examination or treatment, Garvin filed this action on August 19, 1986.[2]
The trial court entered summary judgment for CNA on the fraud count on the ground that it was barred by the exclusive-remedy provisions of the Workmen's Compensation Act, Ala. Code 1975, §§ 25-5-52 and -53, and on the outrage count on the following basis:
 "The allegations of the complaint further do not show that any medical expenses claimed by the Plaintiff were necessitated by her on the job injury; there is no allegation that the medical expenses were reasonable; there is nothing to show that the medical expenses were authorized by the Defendants or if not authorized, the Plaintiff was justified in incurring the medical expenses without authorization; and there was no monetary claim by the Plaintiff for any medical expenses incurred as a result of her on the job injury.
 "In view of this the Court is of the opinion that there would be nothing to submit to a jury as far as the claim of outrageous conduct is concerned."
The principle that a fraud claim against an employer in circumstances connected with a workmen's compensation claim is necessarily barred by the exclusive-remedy *Page 431 
provisions of the Workmen's Compensation Act was overruled inLowman v. Piedmont Exec. Shirt Mfg. Co., 547 So.2d 90 (Ala. 1989). The Court emphasized in Lowman, however, that a mere delay in payment would not support a separate tort claim, but that a remedy for such delays is provided in § 25-5-59; that only intentional frauds would be actionable outside of the exclusive-remedy provision; and that a higher burden of proof would be imposed "in accommodation to the exclusivity provisions of the Act," i.e., "the plaintiff must present evidence that, if accepted and believed by the jury, would qualify as clear and convincing proof of fraud." Id., at 95.
Garvin's burden on her fraud claim is heightened further by the fact that she is alleging promissory fraud, which requires proof that the defendant, at the time the promise was made, intended not to perform. Green Tree Acceptance, Inc. v. Doan,529 So.2d 201 (Ala. 1988); Purcell Co. v. Spriggs Enterprises,Inc., 431 So.2d 515 (Ala. 1983). She argues that CNA's treatment of her claim from the time Shewbart became responsible for it provides evidence of CNA's intent to pay as little as possible on her claim without regard to the merits of the claim, and that her evidence in this regard and in regard to her efforts to obtain a second opinion on further surgery support an inference that CNA, at the time of the settlement in which it agreed to continue medical coverage, had an intent not to provide such coverage.
The evidence submitted on the summary judgment motion did not meet the strict "clear and convincing" test of Lowman. The evidence tends at least as much to show that Garvin's difficulties in obtaining further medical care were the result of ordinary delays, misunderstandings, and breakdowns in communication as it does to show that her difficulties were the result of any deliberate attempt by CNA to deny her further medical care; therefore, the evidence cannot be said to support the fraud claim by clear and convincing proof. There is no clear and convincing evidence of fraudulent intent in the record, and the summary judgment on that count is due to be affirmed.
The summary judgment was also correct on the outrage count. The tort of outrage encompasses only "conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." American Road Serv. Co. v.Inmon, 394 So.2d 361, 365 (Ala. 1980). See also Busby v.Truswal Systems Corp., 551 So.2d 322 (Ala. 1989); NationalSecurity Fire Casualty Co. v. Bowen, 447 So.2d 133 (Ala. 1983). None of the alleged conduct meets this test. CNA was doing "no more than [insisting] upon [its] legal rights in a permissible way," Inmon, at 368 (citation omitted), for which it cannot be held liable in an action based on outrage.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
All of the Justices concur.
[1] Overruled on other grounds, Lowman v. Piedmont Exec. ShirtMfg. Co., 547 So.2d 90 (Ala. 1989).
[2] Since that time, Garvin has had her third back operation and the bone chip was removed.