A workman, Willie James Gibbs, appeals from a summary judgment in favor of his worker's compensation carrier in an action he filed against the company and one of its employees alleging outrageous conduct and fraud in connection with his worker's compensation claim. *Page 415 
The facts, as viewed most favorably toward Gibbs, are as follows: Gibbs was employed by Kowaliga Logging Company. He was cutting trees with a power saw, when a co-employee cut a tree that fell on him.
Gibbs began receiving weekly worker's compensation benefits as a result of the injury he received, but he and the carrier got into a dispute regarding the amount of his weekly average wage and certain conduct of the carrier, including the carrier's refusal to authorize back surgery, that he claims was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society — and therefore actionable. He contends that he suffered extreme emotional distress as a result of the carrier's conduct.
Gibbs's claim of outrageous conduct was based upon his allegations that:
1) The defendants, knowing that his average weekly wage was in excess of $225.00, nevertheless knowingly and intentionally paid him as if it were only $225.00 weekly.
2) The defendants required him to travel to his employer's place of business to get his check, even though they knew it was painful for him to do so and they could have mailed his check.
3) The defendants refused to authorize surgery on his back, even though they knew he was in severe pain and that he was liable to suffer a more severe injury by continuing to work.
We have examined the record in its entirety and have carefully reviewed the law relating to a claim of outrageous conduct, as set out in American Road Service Co. v. Inmon,394 So.2d 361 (Ala. 1981), and we conclude that the trial court properly entered the summary judgment in favor of the defendants on this claim. Inmon stated the requirements of a claim for outrage as follows:
 "The emotional distress [resulting from the conduct] must be so severe that no reasonable person could be expected to endure it. Any recovery must be reasonable and justified under the circumstances, liability ensuing only when the conduct is extreme. . . . By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."
394 So.2d at 365 (citations omitted).
In Inmon, the evidence suggested that the plaintiff, a field adjuster and claims supervisor for the defendant, had been "harassed, investigated without cause, humiliated, accused of improper dealings, treated uncustomarily, and terminated without justification" by company representatives. 394 So.2d at 367. However, this Court, finding no evidence that the defendant had intended to cause the plaintiff severe emotional distress, reversed the trial court's judgment for the plaintiff, stating:
 "While the record supports the conclusion that the management of Inmon's investigation and termination may have been somewhat disorganized, and a humiliating experience for him personally, nevertheless American Road's behavior throughout cannot, as a matter of law, be characterized as 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' "
394 So.2d at 368.
Continental Casualty Insurance Co. v. McDonald,567 So.2d 1208, 1209 (Ala. 1990), has come to represent the minimum threshold that a defendant must cross in order to commit outrageous conduct. In McDonald, this Court, distinguishingGarvin v. Shewbart, 564 So.2d 428 (Ala. 1990), wrote:
 "McDonald's need for treatment for his pain was an immediate, day-to-day need, whereas Garvin's possible need for a third surgery was not. There was pervasive evidence here that McDonald's pain was unusually severe and rendered him especially subject to emotional distress over the continuing availability of treatment, *Page 416 
and that CNA engaged in repeated conduct that brought the availability of treatment into doubt. Garvin's attempts to show that she was suffering distress from the delays in seeing a physician for a second surgery opinion did not so clearly cross the line of 'severe distress' and 'outrageous conduct' that the trial court could be held in error for holding that she had not satisfied the test for the tort of outrage. CNA's dilatory handling of McDonald's claims encompassed a whole spectrum of different claims over a period of five years or more, whereas its (most recent) dispute with Garvin did not ripen into unusual delays or hindrances until some time during the two-year period during which Garvin was seeking a second opinion. Most significantly, perhaps, McDonald has produced evidence from CNA's own records and communications that its goal in dealing with him was to persuade him, or, as the jury may have found, to coerce him, to settle for a lump-sum benefit, whereas Garvin produced no such direct evidence of an arguably improper motive in its dealings with her."
567 So.2d at 1220.
The McDonald Court distinguishes Garvin and similar cases on the ground that there was evidence in McDonald that the defendant insurer knew that the plaintiff was enduring severe pain and knew that he was especially susceptible to emotional distress. There was evidence in McDonald from which a jury could have determined that the defendant intentionally delayed payments for needed treatment in an effort to force the plaintiff into settling for a lesser sum than that to which he was entitled.
In the instant case, although Gibbs was no doubt inconvenienced by the conduct alleged in his complaint, there is no evidence that Aetna's actions were intended to cause Gibbs severe emotional distress or that Aetna had improper motives in dealing with Gibbs. Aetna presented arguable reasons for each of Gibbs's allegations, except for its delays in correcting the amount of Gibbs's weekly compensation benefits and reimbursing Gibbs for drug bills, and its delay, from April 10, 1990, until June 25, 1990, in reinstating Gibbs's temporary total disability benefits. Such delays, without proof of an improper motive on the part of Aetna, do not constitute the type of conduct described by this Court in Inmon as being "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." 394 So.2d at 368. The facts of this case are more similar to those in Garvin.
In Garvin the plaintiff had undergone two surgeries in connection with her work-related back injury, and her surgeon recommended a third in August 1983. In May or June 1984, the plaintiff went to another doctor for a second opinion, but the defendant insurer refused to pay for treatment by the second doctor, insisting on its right, pursuant to Code of Alabama
1975, § 25-5-77, to select a physician. The defendant subsequently made an appointment for the plaintiff to see an orthopedic specialist; however, when the plaintiff arrived for her appointment, the doctor refused to treat her because he did not have her medical records. The evidence indicated that despite repeated requests by the plaintiff's attorney, beginning in December 1984, the insurance company delayed sending the records until sometime around July 1985. After the records were finally sent, the plaintiff was told by the people in the doctor's office "that they did not know when Dr. Barnes would be able to see her." In October 1985, the defendant selected another doctor for the plaintiff. When the plaintiff saw the doctor, he informed her that he did not do back surgery. There was evidence that the defendant also stopped paying for the plaintiff's prescription medication around this time. After further unsuccessful attempts to obtain authorization from the defendant for treatment, the plaintiff sued, alleging fraud and outrage. This Court determined that the trial court had correctly entered a summary judgment on both counts, holding, with regard to the count alleging outrage: *Page 417 
 "The summary judgment was also correct on the outrage count. The tort of outrage encompasses only 'conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.' [Citations omitted.] None of the alleged conduct meets this test. CNA was doing 'no more than [insisting] upon [its] legal rights in a permissible way,' Inmon, at 368 (citation omitted), for which it cannot be held liable in an action based on outrage."
564 So.2d at 431.
Another recent case on point is Wooley v. Shewbart,569 So.2d 712 (Ala. 1990). In Wooley, the plaintiff, a bartender was injured when she slipped and fell at work. Her worker's compensation claim was processed, and she began receiving periodic worker's compensation payments from the defendant insurance carrier. The plaintiff's claim was subsequently assigned to the insurer's claims supervisor, who questioned whether the claim was covered. The claims supervisor eventually decided to terminate the plaintiff's benefits and refused to pay for a scheduled hip surgery. This Court, holding that the trial court had erred in denying the defendant insurance carrier's motion for summary judgment (as to which this Court had granted permission to appeal), stated:
 "The allegation in this case is simply that Shewbart denied Wooley's claim with no arguable reason for doing so. He did not communicate that denial directly to Wooley but sent a letter to her attorney. The only aspect of the denial that could conceivably be called outrageous is that it came shortly before her scheduled surgery. That fact of timing is far from being ' "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as utterly intolerable in a civilized society." ' American Road Service Co. v. Inmon, 394 So.2d 361, 368 (Ala. 1980) (quoting Comment d, Restatement (Second) of Torts, § 46 at 73 (1948)). The evidence in this case is entirely unlike that in Continental Casualty Ins. Co. v. McDonald, from which the jury reasonably could have found that CNA had engaged over an extended time in an effort to coerce McDonald to settle his [claim for] workmen's compensation benefits for an unfairly low lump-sum payment."
569 So.2d at 717.
We conclude that Gibbs failed to establish that Aetna's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."
We now consider Gibbs's fraud claims. Gibbs claims in Count III of his complaint that Aetna intentionally misrepresented to him that his average weekly wage was $225.00 and that he was therefore entitled under the law to benefits of $150.01 per week, knowing that his average weekly wage was actually $275.76, and that he was thus entitled to $183.84 per week. Count IV of his complaint alleges that Aetna committed fraud by suppressing and concealing from him the falsity of the misrepresentations alleged in Count III.
We have reviewed the record and we are convinced that the evidence presented is not of the same character and degree as that required by Lowman v. Piedmont Executive ManufacturingCo., 547 So.2d 90, 94 (Ala. 1989). In Lowman, this Court stated:
 "In order to insure against borderline or frivolous claims, we believe, in view of the exclusivity clause, that a plaintiff, in order to go to the jury on a claim, must make a stronger showing than that required by the 'substantial evidence rule' as it applies to the establishment of jury issues in regard to tort claims generally. See Code 1975, § 12-21-12. Therefore, we hold that in regard to a fraud claim against an employer, a fellow employee, or an employer's insurer, in order to present a claim to the jury, the plaintiff must present evidence that, if accepted *Page 418 
and believed by the jury, would qualify as clear and convincing proof of fraud."
547 So.2d at 95.
The evidence reflects that Gibbs was paid for timber cut by the cord, and, therefore, that his earnings varied from week to week, depending on the amount of wood he cut. Aetna relied on the amount listed by Gibbs's employer, Kowaliga Logging Company, in the "First Report of Injury," in determining Gibbs's weekly salary to be $225.00 and in establishing his weekly benefits at $150.01. Gibbs claims that the fraud occurred when Aetna's claims representative, Diane Martin, called Gibbs and told him that she had computed his average weekly wage to be $225.00 and that he was entitled to $150.01 in benefits, when in fact she had not computed his weekly wage, but had used the figure of $225.00, which appeared in the "First Report of Injury." This evidence does not constitute "clear and convincing" evidence of fraud.
Nor would the evidence support a finding that Aetna's delay in correcting the amount of Gibbs's weekly benefits was the result of a plan to defraud Gibbs. Therefore, based on the foregoing, we hold that the trial court correctly entered the summary judgment in favor of the defendants.
AFFIRMED.
ADAMS, HOUSTON, STEAGALL and INGRAM, JJ., concur.