State Farm Automobile Insurance Company appeals from a judgment entered on a jury verdict in favor of the plaintiff, Vera H. Morris. In this action for damages for the tort of outrage, the jury returned a verdict against State Farm awarding Morris $60,000 in punitive damages. The trial court denied State Farm's posttrial motion for judgment notwithstanding the verdict or for new trial.
The issues before us are (1) whether Vera Morris produced substantial evidence that State Farm intentionally or recklessly engaged in conduct so extreme and outrageous as to be actionable under the tort law of this state; and if so, then (2) whether Morris produced substantial evidence that as a result of State Farm's action she suffered emotional distress so severe that no reasonable person could be expected to endure it. See American Road Service Co. v. Inmon,394 So.2d 361 (Ala. 1980).
In September 1988, Morris sued State Farm, alleging that in delaying payment under Timothy Scott Cason's liability coverage and Morris's underinsured motorist coverage, State Farm committed the tort of outrage. Morris also claimed breach of contract, fraud, and bad faith because of State Farm's alleged delay in paying under Morris's underinsured motorist coverage. By agreement, Morris's contract claims were dismissed. Subsequently, the trial court entered a summary judgment in favor of State Farm on Morris's bad faith and fraud claims. The outrage claim proceeded to trial.
On July 6, 1987, Vera Morris and her husband Kenieth Morris were injured when their automobile was struck by a vehicle driven by Timothy Scott Cason. Cason was also severely injured in the accident, and his son was killed. It is undisputed that the accident was caused by Cason's loss of control, which had been brought on by excessive speed. Both automobiles were covered under insurance policies issued by State Farm. Cason's liability coverage provided for $25,000 per person and $50,000 per accident. The Morrises' under-insured motorist coverage provided for up to $20,000 above any other recovery.
On July 10, 1987, State Farm assigned both claims to Brad Goodwin, a State Farm claims representative. Goodwin made photographs of the scene and obtained a police report. On July 14, 1987, Goodwin completed a preliminary report, wherein he recorded his opinion that Cason was 100% at fault. Also on July 14, 1987, Goodwin received a letter from attorney James Harris notifying State Farm that he had been retained to represent the Morrises. Neither Goodwin nor any other representative of State Farm had any further direct contact with the Morrises after that date.
On July 14, 1987, Goodwin paid the full amount of the Morrises' property damage claim. On August 27, 1987, Harris requested payment under the medical payments coverage of the Morrises' insurance policy. Goodwin paid the maximum provided under Vera Morris's medical payments coverage. Goodwin later disbursed payments under Kenieth Morris's medical payments coverage.
In December 1987, the Morrises sued Cason in St. Clair County. Pursuant to Cason's liability policy, State Farm retained attorney Dwight Blair to represent Cason. State Farm did not direct or restrict Blair's representation of Cason. Blair was not able to meet with Cason until February 1988, because Cason had personally retained attorney Robert King to represent him and because Cason continued to have medical problems. Robert King continued to serve as Cason's personal counsel throughout this litigation.
Cason contended that he lost control of the vehicle because the accelerator stuck. State Farm had some suspicion, however, that Cason might have been under the influence of alcohol at the time of the accident. State Farm requested Cason's authorization to obtain copies of his medical records in order to determine his blood alcohol level. In response to Cason's failure to provide such authorization, State Farm notified Robert King that State Farm could deny coverage due to Cason's failure to assist State Farm in gathering evidence *Page 442 
regarding the claims against him. No further steps were taken, however, to obtain Cason's medical records until the Morrises' attorney subpoenaed them in the course of litigation. The records showed that when Cason arrived at the emergency room following the accident his blood alcohol level was 163 milligrams per deciliter.[1]
The evidence further shows that State Farm did not retain an expert to determine the viability of Cason's contention that the accelerator on his car had stuck. State Farm presented undisputed evidence, however, that it requested King to retain an expert at State Farm's expense. During the course of the litigation between the Casons and the Morrises, King had possession or control of Cason's automobile.
On March 25, 1988, Cason was deposed. At the deposition, Harris gave Blair a letter demanding the policy limits under Cason's liability insurance and indicated that the Morrises would also make a claim under the underinsured motorist coverage of their own policy. Blair forwarded the demand letter to Robert B. Stamps, a State Farm claims superintendent. Blair and Stamps had other conversations regarding the evaluation and status of the Morrises' claim; and Harris wrote follow-up letters regarding the possibility of settlement.
On August 31, 1988, Kenieth Morris was deposed. Vera Morris was not deposed because of her medical condition. On the same day, Blair recommended to Stamps that Vera Morris be paid the maximum provided under Cason's liability coverage as well as the underinsured coverage under her own insurance policy. After obtaining authority from his supervisor, Stamps authorized Blair to offer Vera Morris $25,000 under Cason's policy and $20,000 under her underinsured motorist coverage. Stamps also authorized Blair to offer Kenieth Morris $20,000 under Cason's liability coverage.
State Farm presented evidence that Blair attempted to communicate this offer to Harris on August 31, 1988, but that Blair was not able to get in touch with Harris. The Morrises filed the present action on September 7, 1988. It is undisputed that on September 8, 1988, Blair communicated State Farm's offer to Harris. Harris then notified Blair that this law suit had been filed in Jefferson County and that Harris would defer to counsel in the present action regarding any further settlement offer. Blair then wrote a letter to Harris confirming the telephone conversation.
There is no evidence that the September 8 settlement offer was communicated to the Morrises. Vera Morris testified that the offer was not communicated to her and that she does not know whether Harris advised her husband of the offer. In his deposition, Kenieth Morris testified that Harris had not relayed any information to him regarding the claim.
In November 1988, Cason and his wife, through their attorney, Robert King, filed a counterclaim against Kenieth Morris for damages for the alleged wrongful death of their son. Pursuant to his liability coverage, State Farm retained counsel to defend Mr. Morris. In December 1989, the litigation between the Morrises and the Casons was settled. The Casons did not recover any damages on their wrongful death claim against the Morrises; and Vera Morris received the limit under Cason's liability policy as well as under her underinsured motorist coverage.
In Nabors v. St. Paul Ins. Co., 489 So.2d 573, 574
(Ala. 1986), we stated that an action alleging outrage or outrageous conduct "is an action difficult of proof and one for which recovery may be had only upon meeting all the elements of the stringent standard announced in American Road ServiceCo. v. Inmon, 394 So.2d 361 (Ala. 1980)." InInmon, we held that one who, "by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another," is "subject to liability for such emotional distress." Inmon, 394 So.2d at 365. In order for the plaintiff to recover for emotional distress, it "must be so severe that no reasonable person could be expected to endure it." Inmon, 394 So.2d at 365. "Any recovery *Page 443 
[of damages for this tort] must be reasonable and justified under the circumstances, liability ensuing only when the conduct is extreme." Inmon, 394 So.2d at 365. Extreme conduct is that which is "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Inmon,394 So.2d at 365.
Recovery of damages for the tort of outrage is limited "to the most reprehensible situations." Kizziah v. Golden RuleIns. Co., 536 So.2d 943, 948 (Ala. 1988). Moreover, we have held that an insurer cannot be held liable for the tort of outrage when it has done nothing more than insist upon its legal rights in a permissible way. Garvin v. Shewbart,564 So.2d 428, 431 (Ala. 1990).
 " 'A jury's verdict is presumed correct and will not be disturbed unless plainly erroneous or manifestly unjust. This presumption of correctness is further strengthened when a motion for new trial is denied by the trial judge. . . .
 " 'In reviewing the correctness of a jury verdict, this Court must review the record in a light most favorable to the appellee.' "
Continental Cas. Ins. Co. v. McDonald, 567 So.2d 1208,1211 (Ala. 1990) (quoting Pate v. Sunset Funeral Home,465 So.2d 347, 350 (Ala. 1984)). Because the jury returned a verdict for Morris, any disputed questions of fact must be resolved in her favor, and we must presume that the jury drew from the facts any reasonable inferences necessary to support its verdict. However, the plaintiff's burden in a case such as this is a heavy one, Green Tree Acceptance, Inc. v.Standridge, 565 So.2d 38, 44 (Ala. 1990), and this Court cannot affirm a judgment based on a verdict if the plaintiff has failed to prove all of the elements of the tort of outrage.
The first issue presented in this appeal is whether Morris presented substantial evidence that State Farm's conduct was "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."Inmon, 394 So.2d at 365. Absent proof of such conduct, Morris cannot recover damages for the tort of outrage.
In Gibbs v. Aetna Casualty Surety Co.,604 So.2d 414 (Ala. 1992), we acknowledged that McDonald, supra, has come to represent the minimum threshold that a defendant must cross in order to commit outrageous conduct. InMcDonald, the plaintiff produced evidence that CNA engaged in a concerted pattern of delays in order to cause distress to McDonald and to pressure him into accepting a settlement. 567 So.2d at 1212. CNA's delay in paying certain hospital bills caused hospitals to file collection actions against McDonald; similarly, McDonald's pharmacy refused to provide further pain medication to McDonald because of CNA's failure to pay previous claims. Id. Moreover, McDonald presented a great deal of documentary evidence that CNA was intent on pressuring McDonald into settling for an amount far less than his actual expenses.
In the present case, although Vera Morris certainly was concerned about her financial condition as a result of State Farm's delay in paying under Cason's liability policy, there is no evidence that State Farm intended to cause her severe emotional distress or that State Farm had improper motives in dealing with her.
In Inmon, the case in which we recognized this tort, we held that the plaintiff had not produced evidence sufficient to support the jury verdict in his favor. 394 So.2d at 367. In that case, Inmon, the plaintiff, a claims representative for an insurance company, was investigated by his employer regarding his participation in a kickback scheme. Inmon presented evidence that his employer engaged in conduct designed "to keep him off balance" and that "he had been harassed, investigated without cause, humiliated, accused of improper dealings, treated uncustomarily, and terminated without justification."394 So.2d at 367. We held, however, that Inmon's evidence did not meet the requirements of the cause of action for the tort of outrage. 394 So.2d at 367. *Page 444 
The American Law Institute's Restatement (Second) ofTorts § 46 (1977) sets out an analysis of the tort of outrage. This Court has adopted the position set forth in comment g to that section; the comment reads: "The actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress. . . ." Inmon, 394 So.2d at 368;Garvin, 564 So.2d at 431.
In Garvin, the plaintiff, Garvin, an injured worker, presented evidence that CNA's claims representative delayed processing Garvin's request for coverage of a third back operation. The evidence further showed that CNA stopped paying for prescription medications that Garvin was taking because of her back injury. In affirming the trial court's summary judgment in that case, we stated that "CNA was doing 'no more than [insisting] upon [its] legal rights in a permissible way,'Inmon, 394 So.2d at 368, for which it cannot be held liable in an action based on outrage." Garvin,564 So.2d at 431.
Similarly, in the instant case, State Farm was doing no more than insisting upon its legal rights in a permissible way. In the first place, State Farm was not obligated to pay anything under the Morrises' underinsured motorist coverage until the limits of Cason's liability coverage had been exhausted. Under § 32-7-23(b)(4), Ala. Code 1975, underinsured motorist coverage is defined in terms of the excess of damages to which the injured is legally entitled over the sum of the proceeds of all liability bonds and insurance that are available to the injured. With regard to its underinsured motorist coverage, State Farm's insurance policy provides: "There is no coverage until the limits of liability of all bodily injury liability bonds and policies that apply have been used up by payments of judgments or settlements." In construing a similar provision in another policy, we held: "Plaintiff can recover uninsured motorist benefits from [the insurer] only after the limits of applicable liability policies have been exhausted by payment of judgments or settlements." United Services Auto. Ass'n v.Allen, 519 So.2d 506, 508 (Ala. 1988).
The terms of Cason's liability policy obligate State Farm to pay damages that an insured becomes legally obligated to pay. Moreover, State Farm was entitled — even required — to provide legal representation to Cason in order to defend against the Morrises' action against him.[2] In spite of the undisputed fact that State Farm's claims representative expressed in his preliminary report an opinion that Cason was 100% at fault, Morris did not produce evidence that State Farm's delay in settling the claim was "outrageous and extreme"; nor has Morris presented evidence from which a reasonable jury could conclude that State Farm's actions were taken with the intent to cause Morris severe emotional distress or with the knowledge that Morris was likely to experience severe emotional distress as a result of its conduct. While it was within State Farm's power to settle the claim against Cason before a legal determination was made, we have noted that "there is clearly a threshold beyond which an insurance company's recalcitrance must go before it crosses into outrageous conduct." McDonald, 567 So.2d at 1216. State Farm's conduct in this case did not cross that threshold.
It is undisputed that soon after the accident State Farm paid the full amount of the Morrises' property damage claim. Moreover, State Farm promptly made payments under the medical payments coverage of the Morrises' insurance policy. State Farm also presented undisputed evidence that just over one year from the date of the accident, State Farm attempted to communicate to the Morrises' attorney an offer to pay the limits of Cason's liability coverage and the limits under Vera Morris's underinsured motorist coverage. The Morrises' counsel then notified State Farm that the present action had been filed. During the pendency of this action, State Farm settled the claim under Cason's liability coverage for $25,000 and paid Vera *Page 445 
Morris $20,000 under her underinsured motorist coverage.
After reviewing the evidence in light of the standard set out above, we conclude that, as a matter of law, Vera Morris did not produce evidence from which a reasonable jury could conclude that State Farm engaged in conduct so "extreme" and "outrageous" as to lead to liability for damages for the tort of outrage. See Inmon, 394 So.2d at 365.
Even if State Farm's conduct had been of such a character as to be termed "outrageous" and "extreme" within the meaning ofInmon, we nevertheless would have to conclude that Morris produced no evidence from which a reasonable jury could conclude that she suffered emotional distress so severe that no reasonable person could be expected to endure it.Inmon, 394 So.2d at 365.
Vera Morris presented testimony that she became more and more worried and frustrated during her lengthy convalescence. She further showed that she suffered sleeplessness and distress, wondering how she and her husband would pay everyone. In light of the fact that the Morrises had paid $25,000 of their own money for medical expenses, one could conclude that she was concerned about their financial condition. The evidence indicated that her worrying lasted from the time she became well enough to be aware until the proceeds of the insurance policies were paid. She further testified that she did not have to seek professional treatment or counseling because of her distress.
In McDonald, we noted that the plaintiff's pain "was an immediate, day to day need." 567 So.2d at 1220. While treatment for Vera Morris's medical condition was also a day to day need and concern, her situation was not similar to that of the plaintiff in McDonald, because, in that case, the defendant's delay in paying McDonald's claims led to refusals by certain providers to provide further medical treatment. There is no evidence that either of the Morrises was unable to obtain medical treatment for the injuries. Rather, the record shows that Vera Morris's concern was over their future financial condition.
In U.S.A. Oil, Inc. v. Smith, 415 So.2d 1098, 1101
(Ala.Civ.App.), cert. denied, 415 So.2d 1102 (Ala. 1982), the Court of Civil Appeals commented:
 "The tort of outrage was not developed to provide a person with a remedy for the trivial emotional distresses that are common to each person in his everyday life. Such [distresses are] the price of living among people."
In that case, the court stated that "though [the plaintiff] apparently did suffer some distress, it was not so 'severe' as to support recovery for the tort of outrage."415 So.2d at 1101. Similarly, we conclude that although the evidence indicates that Vera Morris did suffer some emotional distress, it does not support the jury's conclusion that her distress was so severe that no reasonable person could be expected to endure it.
Thus we conclude that the trial court erred in overruling State Farm's motion for a judgment notwithstanding the verdict. Accordingly, the judgment of the trial court is reversed and a judgment for the defendant is rendered.
REVERSED AND JUDGMENT RENDERED.
HORNSBY, C.J., and ALMON, ADAMS and STEAGALL, JJ., concur.
[1] A level of 163 milligrams per deciliter is equivalent to .163 percent by weight alcohol in blood.
[2] In accord with this requirement, State Farm also retained legal counsel to represent Mr. Morris in defense of the Casons' claim against him.