[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 640 
ITT Specialty Risk Services, Inc. (hereinafter referred to as "ITT"), appeals from the St. Clair Circuit Court's denial of ITT's motion for a summary judgment. The Court granted ITT's petition for a permissive appeal pursuant to Rule 5, Ala.R.App.P. We affirm in part, reverse in part, and remand.
In May 1994, Rhonda Barr filed a workers' compensation claim against Bruno's Inc., for an injury that occurred in 1992 in the line and scope of her employment with Bruno's. On June 24, 1996, ITT became the third-party administrator for Bruno's workers' compensation program and in that capacity began handling Barr's claim. Barr's workers' compensation claim against Bruno's was settled in November 1996, but the final order issued by the court provided that "[f]uture medical benefits [remained] open, and Barr [retained] the right to proceed in a future action for any denial of said medical benefits." Barr returned to work at Bruno's and worked there until January 1998.
In January 1998, Barr telephoned ITT, complaining of further medical problems related to her 1992 injury, and she requested medical treatment. ITT authorized treatment from Dr. Sharon Colgin, the physician who had treated Barr's injury before the final order based on the settlement was issued in 1996. On January 26, 1998, ITT received a telephone call from Dr. Colgin's office; during that call ITT was informed that Dr. Colgin had not treated Barr since 1995, and Dr. Colgin requested authorization from ITT to treat Barr.
Although Barr's appointment with Dr. Colgin was rescheduled several times by both Dr. Colgin and by Barr, Barr eventually saw Dr. Colgin on June 16, 1998. On June 23, 1998, Dr. Colgin's office telephoned ITT, at ITT's request, to update ITT on Barr's June 16 appointment. Dr. Colgin informed ITT that she *Page 641 
recommended a nerve-conduction study to further evaluate Barr's complaints; ITT authorized the study. ITT authorized a second appointment for Barr with Dr. Colgin on July 28, 1998. At that time, Dr. Colgin made the following note in Barr's file:
 "I would recommend that [Barr] consider seeing a pain specialist, for I think that she will have problems from here on out. I would recommend that she be sent to see Dr. Toutec at HealthSouth or Dr. Claudia McDonald, a neurosurgeon and pain specialist here at Brookwood Medical Center. I think that treat[ment] by a pain specialist would allow Ms. Barr to become more functional."
At the bottom of the note is the caption "cc: W/C Nicole Davis, Claims, ITT Specialty Risk Services, Inc., Post Office Box 305104, Nashville, TN 37230-5104." At the bottom of this note is a check mark. Dr. Colgin testified that the check mark was used in her office to indicate that the note had been copied and sent to the appropriate address.
On August 4, 1998, ITT received a telephone call from Barr, stating that Dr. Colgin had referred her to Dr. Toutec at HealthSouth. ITT advised Barr that it could not authorize treatment by Dr. Toutec until ITT had received a referral from Dr. Colgin and her notes from the nerve-conduction study. On September 9, 1998, ITT made the following statements in its activity log for Barr's case:
 "Dr. office is waiting for call regarding treatment. . . . Please contact Dr. Colgin's office and obtain [her] notes — find out about the Dr. at HealthSouth. Is this a Dr. we want clmt treating w/? Insured wants to make sure we continue to keep control of this claim and the treating Dr. as they question if clmt is trying to get treatment w/ another physician."
On September 10, 1998, an ITT employee telephoned Barr. Barr explained to the ITT employee that she had been referred to Dr. Toutec by Dr. Colgin for pain management. Also on September 10, 1998, ITT's activity log indicates a conference telephone call between ITT employees and Bruno's employees who monitor workers' compensation claims. The notation in ITT's activity log after the conference call reads: "Another major issue on this case is that if we are going to keep it on this claim, clt should not involve a new phys."
On September 11, 1998, Valerie Boston, an ITT employee, took a recorded statement from Barr concerning Barr's injury and her treatment for that injury. In this statement, Barr informed Boston that she had been referred to Dr. Toutec by Dr. Colgin for pain management. Also on September 11, 1998, ITT telephoned Dr. Colgin's office and an ITT employee spoke with Verda Lloyd, Dr. Colgin's secretary. ITT maintains that this telephone call indicated that neither Dr. Colgin nor Barr had provided ITT with Barr's medical records. However, the entry made in ITT's activity log on September 11, 1998, states:
 "Call to Dr. Colgin's office . . . S/W Verda. She states that the medicals have been sent faxed to us 4 times she refused to do it again. She stated she would mail a copy of the records to clmt then the clmt can be responsible for getting it to us."
On September 14, 1998, ITT placed another call to Dr. Colgin's office. The activity log states that Verda Lloyd indicated that Dr. Colgin had not referred Barr to another physician. However, Verda Lloyd submitted an affidavit in which she avers that she never made such a statement and that, because she does not practice medicine, she was authorized only to answer *Page 642 
ITT's questions by reading to ITT the contents of Barr's medical records. ITT does not point to any of Barr's medical records that contain the statement made in the activity log.
Barr had a third appointment with Dr. Colgin on September 23, 1998. On that day, Dr. Colgin made the following notes in answer to a questionnaire submitted to her by ITT:
 "At the time of our last visit, I did feel that she would benefit for her to see a pain specialist and she has been told by her W/C company that I would have to make that referral. Given that, I will make referral to Dr. Claudia McDonald, a Neurosurgeon at Brookwood. I feel that she will always have an element of chronic pain, and hopefully a pain specialist would be able to help her in some way. I do feel that she will be able to return to some type of gainful employment, but for the time being . . . I would recommend that she not be returned to work until she sees the pain specialist.
". . . .
 "Personally, I have no surgical treatment options remaining, and I am making a referral to Dr. Claudia McDonald, a Neurosurgeon and pain specialist."
At the bottom of the note, the line showing the distribution of copies indicated that a copy had been sent to ITT at its Nashville, Tennessee, address. Next to the address was a check mark, indicating that the note had been copied and placed in the mail.
On October 7, 1998, Barr telephoned ITT and stated that Dr. Colgin had referred her to Dr. Claudia McDonald for pain management. ITT told Barr that, at that time, it had not been informed that a referral had been made. On October 20, 1998, ITT telephoned Dr. Colgin's office concerning the referral. ITT's activity log indicated that one of Dr. Colgin's employees stated that Dr. Colgin had "recommended" that Barr see a pain-management specialist, but that she did not "refer" Barr to a pain-management specialist. Verda Lloyd and Debbie Weichman, Dr. Colgin's office manager, submitted affidavits stating that they only read Barr's medical records aloud to ITT in response to ITT's telephone calls about Barr's treatment. Lloyd and Weichman both denied making the statement recorded in ITT's activity log, and ITT has not demonstrated where this statement appears in Barr's medical records.
In November and December 1998, ITT's activity log records some of Dr. Colgin's medical notes and the results of the nerve-conduction study. Jennifer Craddock, Jennifer Shelton, and Valerie Boston, who handled claims for ITT, testified in depositions that ITT's policy on referrals is that either the referring doctor or the doctor to whom the patient is referred must telephone ITT to receive official authorization for the referral. All three ITT employees admitted that they had never informed Barr or Dr. Colgin of this policy. Furthermore, the ITT employees testified that this "policy" is not a written policy. Each claims adjuster testified that she did not doubt the medical necessity of pain management for Barr or the reasonableness of her request for authorization for such treatment, but that ITT was waiting for a telephone call from Dr. Colgin's office before ITT would authorize the referral. Jennifer Craddock testified that as a processor on Barr's file she could have authorized treatment for Barr by a pain specialist even without a telephone call from Dr. Colgin.
Barr stated in her deposition testimony that because ITT refused either to tell her the procedure for obtaining a referral under its guidelines or to authorize treatment by a pain-management specialist, she eventually made an appointment on her own *Page 643 
with Dr. Charles Crowe. On March 5, 1999, Barr filed this action against ITT. Shortly thereafter, ITT assigned a rehabilitation nurse to Barr's case and approved Barr's treatment by a pain specialist, Dr. Ted Sartain. After approximately five months' treatment by Dr. Sartain, Barr's pain was under control and Dr. Sartain noted that Barr was "getting along fine."
Barr's complaint against ITT alleged breach of contract, negligence and wantonness, fraud and deceit, fraudulent misrepresentation, civil conspiracy, fraudulent suppression, and the tort of outrage. ITT moved for a summary judgment, requesting the St. Clair Circuit Court to dismiss all of Barr's claims. The trial court entered a summary judgment for ITT on Barr's breach-of-contract claim, negligence and wantonness claims, fraud and deceit claims, and civil-conspiracy claim. The court denied ITT's motion for a summary judgment as to Barr's claims asserting the tort of outrage, fraudulent misrepresentation, and fraudulent suppression. ITT argues that the trial court erred in denying its summary-judgment motion as to those claims. ITT petitioned for permission to appeal from an interlocutory order under Rule 5, Ala.R.App.P. We granted the petition.
 Discussion
The law governing this Court's review of a summary judgment is well-settled:
 "[A] party moving for a summary judgment [under Rule 56, Ala.R.Civ.P.,] is entitled to such a judgment if that party meets the following two-tiered standard: 1) There must be no genuine issue of material fact and 2) the movant must be entitled to a judgment as a matter of law. Rule 56(c); Carpenter v. Davis, 688 So.2d 256, 258 (Ala. 1997). Furthermore, this Court must view all the evidence in a light most favorable to the nonmovant and must resolve all reasonable questions from the evidence in favor of the nonmovant. Fincher v. Robinson Bros. Lincoln-Mercury, Inc., 583 So.2d 256
(Ala. 1991); see Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala. 1990).
 "The movant must make a prima facie showing that there are no genuine issues of material fact and that he is entitled to a judgment as a matter of law. Fincher, 583 So.2d at 257. If the movant makes this showing, the burden then shifts to the nonmovant to rebut the movant's prima facie showing by presenting `substantial evidence' creating a genuine issue of material fact. Id. `Substantial evidence' is `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co., 547 So.2d 870, 871 (Ala. 1989)."
Ex parte Alabama Dep't of Transp., 764 So.2d 1263, 1266 (Ala. 2000).
 I.
ITT argues that Barr failed to produce any evidence creating a genuine issue of material fact as to her claim alleging the tort of outrage. For Barr's tort-of-outrage claim to survive ITT's properly supported motion for a summary judgment, Barr was required to produce substantial evidence that ITT, by extreme and outrageous conduct, intentionally or recklessly caused her severe emotional distress.[1] See American Road Serv. Co.v. Inmon, 394 So.2d 361, 365 (Ala. 1980). *Page 644 
 "The emotional distress . . . must be so severe that no reasonable person could be expected to endure it. Any recovery must be reasonable and justified under the circumstances, liability ensuing only when the conduct is extreme. By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."
Inmon, 394 So.2d at 365 (citation omitted). Although this Court held inGarvin v. Shewbart, 442 So.2d 80 (Ala. 1983), that the exclusivity provisions of Alabama's Workers' Compensation Act do not bar claims based on the tort of outrage, this Court has affirmed tort-of-outrage claims based on outrageous conduct in a workers' compensation context only two times since the tort of outrage was recognized in 1980. See TravelersIndem. Co. of Illinois v. Griner, 809 So.2d 808 (Ala. 2001); andContinental Cas. Ins. Co. v. McDonald, 567 So.2d 1208 (Ala. 1990).
"In Gibbs v. Aetna Casualty Surety Co., 604 So.2d 414 (Ala. 1992), we acknowledged that McDonald, supra, has come to represent the minimum threshold that a defendant must cross in order to commit outrageous conduct." State Farm Auto. Ins. Co. v. Morris, 612 So.2d 440,443 (Ala. 1993). McDonald was injured in the line and scope of his employment. He filed a workers' compensation action against Continental Casualty Insurance Company ("CNA"), his employer's insurance carrier, and settled the disability portion of the claim for $12,000. The judgment accepting the settlement left open the medical portion of the claim, and CNA was liable for all of McDonald's future medical expenses arising from his injury.
Over a period of five years, CNA delayed payments to doctors, hospitals, and pharmacists for unreasonable periods. The delayed payments resulted in the hospitals' threatening McDonald with collection actions and caused a pharmacy to refuse to provide him with pain medication. CNA refused to pay for a whirlpool bath that had been prescribed by McDonald's doctor and continued to insist that McDonald try other alternatives to the whirlpool, although McDonald's doctor repeatedly explained to CNA that other alternatives were not viable. CNA then attempted to coerce McDonald into settling for an amount far less than CNA owed him.
McDonald sued CNA, alleging the tort of outrage. The jury returned a verdict in favor of McDonald. CNA appealed; this Court held that the facts of McDonald's case supported a finding that CNA "systematically withheld payments in order to cause McDonald anguish over the possibility of the cessation of medical treatments for his pain and thereby to cause him to accept a method of payment that would not subject him to CNA's `aggravation,' as he called it." 567 So.2d at 1221.
In the case before us, Barr has presented substantial evidence from which a jury could reasonably find that ITT had unreasonably refused to authorize her treatment by a pain-management specialist. Jennifer Craddock, Jennifer Shelton, and Valerie Boston each testified that she did not doubt Barr's need for treatment with a pain-management specialist, yet each refused to authorize the treatment. The notes entered in ITT's activity log *Page 645 
could certainly be interpreted to mean that ITT had decided that Barr was not to receive treatment by any other physicians, regardless of her needs. Furthermore, ITT authorized treatment for Barr by a pain-management specialist after Barr filed this action against ITT, even though Dr. Colgin never telephoned ITT to authorize the referral.
The refusal alone to authorize the referral, however, does not rise to the threshold of the outrageous behavior set out in McDonald. McDonald had numerous problems with CNA's failure to authorize the most basic of claims for over five years. CNA then used the results of its failure to pay to coerce McDonald into settling with CNA for an amount much smaller than his medical needs would have required. McDonald presented evidence demonstrating that he faced severe pain every day and that CNA took advantage of his pain by ceasing to pay for his pain medication. The evidence supported the finding that CNA intentionally caused McDonald severe emotional distress and that it attempted to use that distress for its gain.
The facts of Barr's case are more analogous to the facts in Wooley v.Shewbart, 569 So.2d 712 (Ala. 1990). Carolyn Wooley sued her employer and her employer's workers' compensation insurance carrier, alleging the tort of outrage. Wooley argued that the defendants' refusal to continue paying workers' compensation benefits to her and the defendants' refusal to approve a scheduled hip operation for her, despite her doctors' recommendations, was conduct "so extreme as to go beyond all bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society." Wooley, 569 So.2d at 715.
The trial court denied the defendants' motion for a summary judgment on the tort-of-outrage claim, and the defendants appealed. This Court observed that Wooley's allegation was "simply that Shewbart denied Wooley's claim with no arguable reason for doing so." Wooley, 569 So.2d at 717. The only aspect of the denial that could possibly have been outrageous was the fact that the denial came shortly before Wooley's scheduled hip operation. The denial and the timing aspect, however, did not rise to the level of outrageous conduct necessary to survive the defendants' summary-judgment motion.
Similarly, Barr alleges that ITT refused to authorize her referral to a pain-management specialist, for no arguable reason, until she filed the present action against ITT. Even if Barr's allegations are true, the failure to authorize a referral alone does not amount to "conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." American Road Serv. Co., 394 So.2d at 365 (citation omitted). Barr has failed to produce any evidence demonstrating that ITT acted intentionally or recklessly to cause Barr extreme emotional distress. Furthermore, Barr has failed to produce any evidence to show that ITT's conduct was "outrageous" as that term is defined in American Road Service Co., 394 So.2d at 365.
Because Barr failed to produce substantial evidence to support her tort-of-outrage claim against ITT, the trial court's denial of ITT's summary-judgment motion as to this claim is due to be reversed.
 II.
ITT contends that the trial court wrongly denied its motion for a summary judgment on Barr's fraudulent-suppression and fraudulent-misrepresentation claims against ITT. First, ITT maintains that Barr failed to produce clear and convincing evidence to support her claim of fraudulent *Page 646 
suppression. Specifically, ITT argues that it did not owe Barr a duty to disclose its procedures for obtaining a referral to a pain specialist. Barr responds that under the facts of this case, there was no way, other than disclosure of the procedures by ITT, for Barr or her doctor to learn the appropriate manner to comply with ITT's requirements for obtaining a referral to a pain specialist. Therefore, according to Barr, ITT did have a duty to inform her or her doctor as to the appropriate referral procedures.
Alabama's Workers' Compensation Act ("the Act") applies to injuries resulting from accidents "arising out of and in the course of" the employee's employment. See § 25-5-51, Ala. Code 1975. See also Exparte Kmart Corp., 812 So.2d 1205 (Ala. 2001); Ex parte Fryfogle, 742 So.2d 1258 (Ala. 1999); Ex parte TrinityIndus., Inc., 680 So.2d 262 (Ala. 1996); Ex parte Patterson, 561 So.2d 236
(Ala. 1990); and Hughes v. Decatur Gen. Hosp., 514 So.2d 935 (Ala. 1987). When an employee suffers injuries that do not result from an accident "arising out of and in the course of" his or her employment, that employee is not precluded by the exclusivity provisions of the Act from bringing an intentional-tort claim against an employer or against an agent of the employer. "This Court has recognized that intentional tortious conduct, such as intentional fraud, `committed beyond the bounds of the employer's proper role,' is actionable notwithstanding the exclusivity provisions of the workers' compensation act." Hobbs v.Alabama Power Co., 775 So.2d 783, 786 (Ala. 2000), quoting Lowman v.Piedmont Executive Shirt Mfg. Co., 547 So.2d 90, 95 (Ala. 1989). See alsoNamislo v. Akzo Chem. Co., 671 So.2d 1380 (Ala. 1995); Gibson v. SouthernGuar. Ins. Co., 623 So.2d 1065 (Ala. 1993); Gibbs v. Aetna Cas. Sur.Co., 604 So.2d 414 (Ala. 1992); Tittle v. Custard Ins. Adjusters,590 So.2d 880 (Ala. 1991); and Garvin v. Shewbart, 564 So.2d 428 (Ala. 1990).
In order to defeat ITT's motion for a summary judgment on these intentional-tort claims, however, Barr must meet a higher standard to demonstrate that a material issue of fact exists.
 "`[A] plaintiff, in order to go to the jury on a claim [alleging intentional tortious conduct], must make a stronger showing than that required by the `substantial evidence rule' as it applies to the establishment of jury issues in regard to tort claims generally. See Code 1975, § 12-21-12. Therefore, we hold that in regard to a fraud claim against an employer, a fellow employee, or an employer's insurer, in order to present a claim to the jury, the plaintiff must present evidence that, if accepted and believed by the jury, would qualify as clear and convincing proof of fraud.'"
Hobbs, 775 So.2d at 787 (quoting Lowman, 547 So.2d at 95). Thus, in order for Barr's fraudulent-suppression claim to go to a jury, Barr must demonstrate by clear and convincing evidence each of the following elements:
 "(1) [T]hat the defendant had a duty to disclose a material fact; (2) that the defendant concealed or failed to disclose this material fact; (3) that the defendant's concealment or failure to disclose this material fact induced the plaintiff to act or to refrain from acting; and (4) that the plaintiff suffered actual damage as a proximate result of being induced to act or to refrain from acting."
Ex parte Walden, 785 So.2d 335, 338 (Ala. 2000).
ITT disputes only the first element of Barr's fraudulent-suppression claim; it insists that it had no duty to inform Barr or her doctor of the procedures necessary to obtain a referral to a *Page 647 
pain specialist. Section 6-5-102, Ala. Code 1975, states that a duty to disclose a material fact arises when there is a confidential relationship between the parties or when the particular circumstances of the case require such a disclosure. In evaluating whether ITT had a duty to inform Barr of its referral procedures, this Court considers several factors: "(1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiff's opportunity to ascertain the fact; (5) the customs of the trade; and (6) other relevant circumstances." State Farm Fire Cas. Co. v. Owen,729 So.2d 834, 842-43 (Ala. 1998).
These factors, when considered together, weigh heavily in favor of Barr's claim that ITT owed her a duty to inform her of the proper manner in which to obtain a referral. We first note that ITT was the third-party administrator of workers' compensation claims against Bruno's. Therefore, Barr was dependent on ITT's approval of her referral to a pain specialist before she could receive treatment for her work-related injury. Obviously, if Barr wanted her work-related injury to be treated under her employer's workers' compensation plan, Barr had to receive ITT's approval of Dr. Colgin's referral.
Second, ITT's employees stated that ITT had a policy that prevented them from authorizing referrals until ITT received a telephone call from either the doctor making the referral or the doctor to whom the patient was referred. In this case, it appears that ITT was the only party with knowledge of this fact. ITT admits that it never informed Barr of this policy, even after she made several telephone calls to ITT to check on the progress of her referral to a pain specialist. Barr maintains that she was not aware of this policy, and ITT has presented no evidence to demonstrate otherwise. Furthermore, ITT admits that it never told Dr. Colgin of this requirement, and the record contains no evidence indicating that ITT informed Dr. McDonald, the pain specialist referred by Dr. Colgin, that she had to call ITT to obtain approval of the referral.
Third, the fact that ITT would not authorize Barr's referral to a pain specialist without a telephone call from Dr. Colgin or a telephone call from the referred pain specialist is the crux of this case. Fourth, it is undisputed that Barr had no opportunity to obtain information concerning ITT's policy for referrals from any other source. The record contains deposition testimony of ITT employees, one of whom was a supervisor, each admitting that this "policy" is not a written one. As discussed above, the ITT employees further admitted that they did not inform Barr or Dr. Colgin of this policy, and ITT does not present any evidence indicating that it informed Dr. McDonald of the necessity of a telephone call before she could be authorized to treat Barr. The record is devoid of any explanation from ITT as to how Dr. Colgin or Barr should have known that Dr. Colgin or the pain specialist to whom Barr was seeking to be referred needed to call ITT to obtain official authorization for Barr's referral.
Finally, ITT has not demonstrated that its policy is the standard custom in its trade. Although two of ITT's employees stated that ITT's requirements were standard practice in the industry, it is not at all clear from the record that either employee was qualified to testify as to standard customs in the insurance industry.
After reviewing the record, the arguments of the parties, and the applicable caselaw, we conclude that the trial court correctly decided that ITT owed Barr a duty to disclose the procedures for obtaining a referral to a pain specialist. Furthermore, Barr has presented evidence, *Page 648 
that, if accepted and believed by a jury, would qualify as clear and convincing evidence of fraudulent suppression by ITT. Therefore, we affirm the trial court's denial of ITT's motion for a summary judgment as to Barr's claim of fraudulent suppression.
 III.
ITT indicated in its petition to this Court for permission to appeal the interlocutory order that it intended to appeal the trial court's denial of a summary judgment on Barr's claim of fraudulent misrepresentation. ITT, however, fails to make any specific argument in its brief or in its reply brief as to why the trial court's ruling as to this claim was erroneous. Because it is not the duty of this Court to create and advance legal arguments for the parties, we affirm the trial court's denial of ITT's summary-judgment motion as to this issue. SeeDykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala. 1994), citingSpradlin v. Spradlin, 601 So.2d 76, 78-79 (Ala. 1992).
 Conclusion
Because Barr failed to present substantial evidence in support of each element of her tort-of-outrage claim, we reverse the trial court's denial of ITT's summary-judgment motion as to that issue. We affirm the trial court's denial of the summary-judgment motion as to Barr's remaining intentional-tort claims. Barr produced evidence that, if accepted and believed by a jury, would qualify as clear and convincing evidence of fraudulent suppression. Furthermore, ITT has failed to provide this Court with any specific argument demonstrating that the trial court erred in denying ITT's motion for a summary judgment as to Barr's fraudulent-misrepresentation claim. Therefore, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MOORE, C.J., and HOUSTON, SEE, LYONS, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
[1] ITT argues that Barr must present "clear and convincing" evidence of her outrage claim in order to survive summary judgment. The appropriate standard for overcoming a summary-judgment motion on a claim asserting the tort of outrage in a workers' compensation context is to produce "substantial evidence." See Farley v. CNA Ins. Co., 576 So.2d 158
(Ala. 1991); and Nabors v. Travelers Ins. Co., 551 So.2d 308 (Ala. 1989).