Kerry S. Jenkins sued to vacate his workers' compensation settlement agreement with United States Fidelity and Guaranty Company ("USF G") for fraud, and also sought damages for the tort of outrage. The trial court entered a summary judgment for the workers' compensation carrier, USF G, and its employee, Nita Simpkins, holding: (1) that the claim to set aside the settlement agreement was time-barred under Ala. Code 1975, § 25-5-56; and (2) that Jenkins had failed to produce substantial evidence of outrageous conduct. Jenkins appealed. We affirm.
The facts, viewed most favorably to the nonmovant, Jenkins, are as follows: In 1985, while working for Cahaba Tractor Company, Jenkins sustained a hernia as he lifted a battery. Jenkins underwent surgery for his injury and subsequently developed blood clots, which caused severe pain. The blood clot problem requires Jenkins to take extremely high doses of medication.
In 1990, Jenkins approached USF G, Cahaba Tractor's workers' compensation carrier, about settling his claims for future medical expenses.[1] The trial court appointed a special master to oversee the settlement negotiations. Jenkins initially demanded a $100,000 lump sum and $1,800 a month for his medical bills. The parties finally agreed to settle Jenkins's prescription drug expenses for: (1) a lump sum of $50,000; and (2) an annuity computed to pay him monthly payments of $1,445 for his remaining life expectancy.
On November 7, 1990, the trial court held a formal hearing to review the negotiated settlement. At the hearing, the special master and Jenkins were questioned concerning the conditions of the settlement. Jenkins indicated that he understood the conditions and that he wanted the settlement. The special master received a letter from Jenkins's psychiatrist indicating that Jenkins was competent to manage his own affairs. The trial court determined that Jenkins was fully aware of his actions and that Jenkins had voluntarily entered into the settlement. The trial court approved the settlement.
Approximately 45 days after entering into the November 7, 1990, settlement agreement, Jenkins telephoned the special master, alleging that USF G had fraudulently induced him to settle for $1,445 per month. Jenkins, however, did not file a complaint against USF G until July 16, 1992 — one year and eight months after entering the agreement.
In short, Jenkins alleges that USF G, through its employee Nita Simpkins, defrauded him by misrepresenting the amount *Page 767 
of medical expenses that it was paying for him before the settlement, thereby affecting the determination of the settlement amount. Although Jenkins's actual prescription drug expenses were approximately $1,600 per month, he alleges that USF G represented to him that they totalled only $1,500 per month.
 I. SIX-MONTH LIMITATIONS PERIOD
Jenkins contends that his claim to vacate the workers' compensation settlement for fraud, specifically USF G's alleged misrepresentation of how much his monthly drug expenses were, is not barred by the six-month limitations provision of § 25-5-56, Ala. Code 1975, applicable to a challenge to a workers' compensation settlement. Section25-5-56 provides in pertinent part:
 "Settlements made may be vacated for fraud, undue influence, or coercion, upon application made to the judge approving the settlement at any time not later than six months after the date of settlement."
(Emphasis added.) The undisputed facts show that Jenkins entered into the settlement agreement on November 7, 1990, and that he filed his claim to set aside the settlement agreement on July 16, 1992 — one year and eight months after entering into the settlement agreement.
Jenkins offers two reasons why the six-month limitations period should not apply to him: First, despite filing a complaint alleging fraudulent inducement, Jenkins now contends that he did not discover that USF G fraudulently induced him to enter the settlement agreement until he had an opportunity to participate in discovery in this lawsuit. This argument is inapposite because the statute clearly begins to run on the date of settlement (November 7, 1990), not the date of discovery, and Jenkins filed his claim more than six months after the settlement.[2]
Second, Jenkins contends that under Rule 60(b), Ala. R. Civ. P., the Court has the "inherent power" to vacate a prior judgment. In Clark v. Liberty Mutual Insurance Co.,673 So.2d 395, 397 (Ala. 1995), this Court held that an employee's Rule 60(b)(3) motion to set aside her workers' compensation settlement was time-barred because it was filed after the expiration of the six-month limitations period. We stated that Ala. Code 1975, § 25-5-56, is the "exclusive method for vacating a workers' compensation settlement for fraud." Id. (citingHawkins v. Jim Walter Resources, Inc., 600 So.2d 1052
(Ala.Civ.App. 1992)). Thus, Jenkins cannot avoid the operation of the statute of limitations by casting his claim as one for relief under Rule 60(b).[3] Jenkins's claim to vacate his workers' compensation settlement is time-barred under § 25-5-56.[4]
 II. OUTRAGEOUS CONDUCT
Jenkins next asserts that the summary judgment was improper as to his outrageous *Page 768 
conduct claim.[5] Jenkins argues that USF G's outrageous conduct consisted of: (1) offering him $50,000 plus $1,445 per month while knowing that his entire medical expenses approximated $2,700 per month; (2) offering him this low monthly amount when it knew that he was in severe pain and was taking significant amounts of drugs for the pain; and (3) not informing him that it had established a reserve of over $700,000 for his future medical bills, while settling for less than $300,000 in projected payments.
In American Road Service Co. v. Inmon, 394 So.2d 361, 365
(Ala. 1980), this Court set forth the following elements for the tort of outrage: (1) that the defendant's conduct was intentional or reckless; (2) that it was extreme and outrageous; and (3) that it caused emotional distress so severe that no reasonable person could be expected to endure it. We stated:
 "The emotional distress [resulting from the conduct] must be so severe that no reasonable person could be expected to endure it. Any recovery must be reasonable and justified under the circumstances, liability ensuing only when the conduct is extreme. . . . By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."
Inmon, 394 So.2d at 365 (citations omitted).
In Gibbs v. Aetna Casualty Surety Co., 604 So.2d 414,415-16 (Ala. 1992), this Court affirmed a summary judgment against a worker who claimed his employer's workers' compensation carrier had engaged in outrageous conduct by: (1) paying the worker less weekly compensation than the carrier knew he was due, before reaching any settlement; (2) refusing him further medical treatment and requiring him to travel, even though the carrier knew he was in severe pain; and (3) delaying reimbursement of his drug bills. This Court held that although the worker may have been inconvenienced by the alleged conduct, he had failed to show that the workers' compensation carrier had intended to cause him severe emotional distress. Id. at 416. Thus, the carrier's alleged actions fell substantially short of conduct that was "atrocious, and utterly intolerable in a civilized [society]." Id. at 417.
Before the settlement, USF G had paid for all of Jenkins's medical expenses.[6] USF G never refused Jenkins any medical treatment. USF G has never required Jenkins to travel unnecessarily or to undergo any activity that would increase his level of pain. Although there were certain processing delays, USF G paid all of Jenkins's medical bills. Further, USF G was under no obligation to disclose its internal accounting entry for gross medical benefits reserved for Jenkins. USF G's actions do not begin to approach the rare set of facts that are "atrocious" and "utterly intolerable in a civilized society" and, thus, they are not actionable as the "tort of outrage." See Gibbs, 604 So.2d at 417. Accord Garvinv. Shewbart, 564 So.2d 428 (Ala. 1990).
Based on the foregoing, we hold that the trial court correctly entered the summary judgment in favor of the defendants.
AFFIRMED.
HOOPER, C.J., and MADDOX, ALMON, SHORES, and HOUSTON, JJ., concur.
[1] In 1988, Jenkins settled the disability portion of his workers' compensation claim for $125,000, specifically reserving the issue of his future medical expenses. Jenkins's disability settlement is not at issue in this appeal.
[2] The record reflects that Jenkins telephoned the special master approximately 45 days after entering into the settlement agreement and in the telephone conversation stated to the special master that he had been defrauded. Even if the limitations period in § 25-5-56 began to run only on the date of discovery of the fraud, instead of the date of the settlement agreement, it would not matter; Jenkins filed his claim in 1992 — well over six months after his discovery of the fraud in 1990.
[3] Jenkins also argues that he was incompetent to enter into the settlement agreement. This argument lacks merit. The trial court specifically found that Jenkins was competent to enter into the settlement agreement, based on a letter from Jenkins's psychiatrist stating that Jenkins was competent, and based on Jenkins's participation in the proceedings before the trial court.
[4] We note that Jenkins, in any event, failed to present "clear and convincing" evidence of fraud. See Upchurch v. UniversalUnderwriters Ins. Co., 610 So.2d 1163, 1165
(Ala.Civ.App. 1992) (requiring that evidence of fraud in workers' compensation cases be "clear and convincing," as opposed to "substantial"). Jenkins asserts that USF G represented that his medical bills were only $1,500 per month when it knew the medical bills were, in fact, $2,700 per month. USF G responds by asserting that the parties agreed to the $1,445 monthly figure for prescription drugs alone, not for total medical expenses, because certain government health benefits would cover Jenkins's nonprescription drug medical expenses; the record supports this assertion. Jenkins's prescription drug expenses were approximately $1,600 per month at the time of the settlement. Jenkins stated that he knew the $1,445 monthly payment might not cover all of his monthly drug expenses, but that he thought he could obtain the drugs more inexpensively than he had in the past and that he wanted to receive the lump sum payment from USF G. Thus, there was not "clear and convincing" evidence that USF G knowingly made a false representation to deceive Jenkins into agreeing to the settlement of his claim relating to prescription drug expenses. See Upchurch, 610 So.2d at 1165.
[5] Unlike claims alleging "fraud, undue influence, or coercion," a claim alleging outrageous conduct is not subject to the six-month limitations provision of Ala. Code 1975, § 25-5-56. See Hawkins v. Jim Walter Resources, Inc., 600 So.2d 1052, 1054
(Ala.Civ.App. 1992). Instead, a claim alleging the tort of outrage is subject to a two-year limitations provision. Ala. Code 1975, § 6-2-38(l); Archie v. Enterprise Hosp. Nursing Home, 508 So.2d 693, 695 (Ala. 1987).
[6] After Jenkins asked for a settlement, USF G agreed to settle, based on his prescription drug expenses. Both parties recognized that Jenkins's other medical bills would be covered by a government health benefit plan. This left approximately $1,600 per month in prescription drug expenses. USF G paid Jenkins $50,000 in a lump sum plus an annuity that would pay $1,445 per month for the prescription drug expenses. *Page 769