George W. RAYE, Plaintiff,

v.

EMPLOYER'S INSURANCE OF WAUSAU, et al., Defendants.

No. CIV.A. 04–0488–WS–C.

United States District Court, S.D. Alabama, Southern Division.

Oct. 13, 2004.

Tara B. Armistead, William L. Utsey, Utsey & Utsey, Butler, AL, for Plaintiff.

D. Gregory Dunagan, Vincent A. Noletto, Jr., Carr, Allison, Pugh, Howard, Oliver & Sisson, P.C., Daphne, AL, Henry T. Morrissette, Hand Arendall, L.L.C., Mobile, AL, for Defendants.

## ORDER

STEELE, District Judge.

This matter is before the Court on the plaintiff's motion to remand. (Doc. 21). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs.22–24, 27–28, 30), and the motion is ripe for resolution. After carefully considering the foregoing materials, as well as all other relevant materials in the file, the Court concludes that the motion to remand is due to be denied.

## BACKGROUND

The plaintiff filed this action in the Circuit Court of Choctaw County. The complaint alleges that the plaintiff suffered a work-related injury in 1978 that resulted in a lawsuit against his employer and a settlement in 1983. The complaint also alleges that the plaintiff later filed suit against defendant Employer's Insurance of Wausau ("Wausau"), his employer's worker's compensation carrier, for failing to pay certain medical bills in accordance with the 1983 settlement. This suit as well ended in settlement, with Wausau agreeing in 1998 that it was responsible for the plaintiff's future medical bills related to his 1978 on-the-job injury. The complaint alleges that Wausau has nevertheless failed to pay medical benefits in accordance with the settlement of the 1998 settlement.

In particular, the complaint alleges that defendant Genex Services, Inc. ("Genex") is responsible for providing medical management services in connection with the plaintiff's on-the-job injury and that defendant Mae Wingett is an employee of Genex assigned to the plaintiff's file.[1] The complaint alleges that Wingett "negligently made a determination that Plaintiff's treatment was not related to Plaintiff's on-the-job injuries." (Complaint, ¶ 9; *accord id.*, ¶ 12).

The complaint asserts two causes of action under Alabama law. First, that all three defendants committed the tort of outrage. Second, that Wingett committed the tort of negligence. The complaint's ad damnum clause "prays for the following relief:

1. That the Defendants be ordered to pay Plaintiff's unpaid medical benefits and future medical benefits to which he is enti-

---

**1.** The parties agree that Genex was under contract with Wausau to provide some such

services. (Doc. 1, Wingett Affidavit; Doc. 4, ¶ 3; Doc. 14 at 2).

tled under the Workers' Compensation Act of Alabama.

2. That the Plaintiff be awarded damages compensatory and punitive damages [sic], not to exceed Seventy–Five Thousand and No/100 ($75,000.00) Dollars."

## DISCUSSION

The defendants timely removed on the basis of diversity of citizenship. The plaintiff's motion to remand makes three claims: (1) removal is barred by 28 U.S.C. § 1445(c); (2) the amount in controversy does not exceed $75,000; and (3) Wingett's citizenship defeats complete diversity. The Court considers these arguments in turn.

### A. Section 1445(c).

■ A civil action in any State court *arising under* the workmen's compensation laws of such State may not be removed to any district court of the United States.

28 U.S.C. § 1445(c)(emphasis added). As this Court has previously held after extended discussion, "state causes of action that are creatures of the common law do not 'arise under' the worker's compensation laws." *White v. Travelers Insurance Co.*, Civil Action No. 01–398–S (Doc. 14 at 5–6).[2] Thus, the plaintiff's claims for outrage and negligence do not trigger application of Section 1445(c).

■ The plaintiff appears to suggest that his complaint also includes a "claim" under Alabama's Worker's Compensation Act. (Doc. 21, ¶ 7; Doc. 22 at 4, 15; Doc. 30 at 3). The plaintiff is mistaken. By its terms, the complaint includes only "Count One" and "Count Two," with the former explicitly designated as a claim for "outrageous conduct" and the latter as one for "negligen[ce]." (Complaint, ¶¶ 10, 12). Elsewhere, and more accurately, the plain-

tiff describes the complaint as including only a "demand for medical payments to which he is entitled under the Alabama Worker's Compensation Act." (Doc. 22 at 11). A demand for relief, however, is not a cause of action. The plaintiff has indeed demanded recovery of worker's compensation benefits, but he has done so under the rubric of common-law claims of outrage and negligence, not under the Act itself.

Now grasping at straws, the plaintiff argues finally that his case "involves" a worker's compensation claim because, had the defendants paid him the benefits he allegedly is due, his tort claims "would not have arisen." (Doc. 30 at 2). This may be true but, as discussed in *White*, "that a claim is 'related to' the worker's compensation laws does not establish that it arises under them." (Doc. 14 at 7 (citing *Patin v. Allied Signal, Inc.*, 77 F.3d 782, 789 (5th Cir.1996))). Indeed, the plaintiff quotes and explicitly agrees with this precise passage from *Patin.* (Doc. 22 at 15).

In summary, Section 1445(c) does not render the action, or any portion of it, nonremovable.

### B. Amount in Controversy.

■ The plaintiff argues that his demand for compensatory and punitive damages "not to exceed ... $75,000.00," shifts to the defendants the burden of showing to a legal certainty that the amount in controversy in fact exceeds that amount. (Doc. 22 at 6–11). Responding in kind, the defendants argue that the complaint on its face shows that the amount in controversy exceeds $75,000, shifting to the plaintiff the burden of showing to a legal certainty that the amount in controversy is less than the jurisdictional threshold. (Doc. 27 at 3). The defendants' position is correct.

---

**2.** The full text of the Court's opinion is acces-          sible through CM/ECF.

The plaintiff's error lies in assuming that his complaint demands a sum certain *below* the jurisdictional amount. The complaint expressly articulates the plaintiff's desire to recover $75,000.00 in compensatory and punitive damages. While this figure, standing alone, would not trigger diversity jurisdiction, it is not the only recovery the plaintiff seeks. In addition, the plaintiff demands recovery of past and future medical benefits. Although the complaint attaches no monetary value to this demand, it necessarily amounts to at least $.01, and that single penny is sufficient to satisfy the jurisdictional threshold.[3]

The plaintiff's only argument in opposition to this obvious result is that Section 1445(c) precludes adding the demand for worker's compensation benefits to the demand for compensatory and punitive damages. (Doc. 21, ¶ 7; Doc. 22 at 4–5, 11, 15). This line of reasoning has already been discredited in Part A.

Because the complaint expressly demands recovery in excess of $75,000, the burden is on the plaintiff seeking remand to show "to a 'legal certainty' that his claim is actually for less than the jurisdictional amount." *Burns v. Windsor Insurance Co.*, 31 F.3d 1092, 1094 (11th Cir.1994)(quoting *St. Paul's Indemnity Corp. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 82 L.Ed. 845 (1938)). That is, it must appear "to a legal certainty that a reasonable jury could not have found

[the plaintiff's damages] sufficient to invoke federal jurisdiction." *Dassinger v. South Central Bell Telephone Co.*, 505 F.2d 672, 674 (5th Cir.1974); *accord Lee v. Kisen*, 475 F.2d 1251, 1253 (5th Cir.1973). The plaintiff has failed to address, much less meet, this standard.[4]

In summary, the amount in controversy exceeds $75,000, exclusive of interest and costs.

## C. Diversity of Citizenship.

Both the plaintiff and Wingett are citizens of Alabama. The defendants argue that Wingett was fraudulently joined in an effort to defeat removal. (Doc. 27 at 8–16). The Court agrees.

■■■ "Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir.1998). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440–41 (11th Cir.1983). Conversely, if no such possibility exists, the joinder is fraudulent as a matter of law. *Id.* at 1440.[5]

The plaintiff's outrage claim against Wingett rests on the allegation that she

---

**3.** The evidence is uncontroverted that the plaintiff's past unpaid medical claims exceed $2,000. (Doc. 1, ¶ 32 & Exhibit C). Therefore, even if the ad damnum clause concerning medical benefits could be considered indeterminate, the preponderance of the evidence establishes that the amount in controversy concerning such benefits is a positive number.

**4.** The plaintiff merely offers his affidavit and that of his attorney that they are not seeking over $75,000 in this action, and a pre-suit

settlement demand of $70,000. (Docs. 23, 24). These filings may be evidence of what the plaintiff seeks, but they obviously do not establish that a properly functioning jury could not possibly award more than $75,000.

**5.** *Accord Crowe v. Coleman*, 113 F.3d 1536, 1539 (11th Cir.1997)(issue is "whether the facts alleged in Plaintiffs' complaint state even an arguable cause of action under Georgia law")(emphasis omitted). The plaintiff admits that this is the controlling standard. (Doc. 22 at 18).

*"negligently* made a determination that Plaintiff's treatment was not related to Plaintiff's on-the-job injuries." (Complaint, ¶ 9)(emphasis added). The question, then, is whether an Alabama court could conclude that the plaintiff can pursue an outrage claim against Wingett based on her negligent conduct.

■ Alabama law is settled that a claim of outrage requires intentional or reckless conduct. *E.g., Jenkins v. United States Fidelity & Guaranty Co.,* 698 So.2d 765, 768 (Ala.1997). As a matter of law, merely negligent conduct cannot support such a claim. *E.g., AALAR, Ltd. v. Francis,* 716 So.2d 1141, 1144 (Ala.1998)("This court has adhered to the principle that negligently causing emotional distress is not an independent tort in Alabama ...."). The plaintiff admits as much. (Doc. 14 at 6). Thus, there is no possibility that an Alabama court could find that the complaint states a cause of action for outrage against Wingett.

■ The plaintiff's negligence claim against Wingett is, of course, based on negligence. Under Alabama law, however, a plaintiff "may bring an action against ... any person ... or corporation responsible for servicing and payment of workers' compensation claims for the employer only for willful conduct." Ala.Code § 25–5–11. The statute applies to suits against persons such as Wingett. *See Gibson v. Southern Guaranty Insurance Co.,* 623 So.2d 1065, 1066 (Ala.1993)(injured worker's negligence claim against the medical case coordinator assigned to his file by his employer's worker's compensation carri-

er's contractor was barred by Section 25–5–11). Thus, the plaintiff's claim against Wingett based on mere negligence states no cause of action.

The plaintiff insists that her claim arises under the Alabama Medical Liability Act ("AMLA"), which *requires only negligence.* (Doc. 22 at 23–26). To begin with, Section 25–5–11 makes no exception for cases under the AMLA, so that any such claim would have to allege willful conduct in order to be viable.

■ At any rate, Wingett is not subject to AMLA, which extends to "[a]ny professional corporation or any person employed by physicians, dentists, or hospitals who are directly involved in the delivery of health care services." Ala.Code §§ 6–5–481(8), –542(1). While neither an employer-employee relationship nor a contractual relation is required to establish that a person is "employed" by a physician, dentist or hospital, at a minimum the person must be "used" by a physician, dentist or hospital in the latter's delivery of health care services to the plaintiff. *Anderson v. Alabama Reference Laboratories,* 778 So.2d 806, 810 (Ala.2000)(lab tested specimen collected by plaintiff's physician); *Cackowski v. Wal–Mart Stores, Inc.,* 767 So.2d 319, 324· (Ala.2000)(pharmacist filled prescription written by plaintiff's physician). The complaint reveals, and the plaintiff's briefing confirms, that no physician, dentist or hospital "used" Wingett in delivering health care services to the plaintiff.[6]

In summary, there is no possibility that an Alabama court would find that the com-

---

**6.** The plaintiff relies on *Ex parte Main,* 658 So.2d 384 (Ala.1995), for the proposition that a nurse such as Wingett is subject to the AMLA. (Doc. 22 at 23–24). As the *Main* Court carefully explained, however, the nurse was acting under contract to a hospital and a doctor. *Id.* at 386–87. The plaintiff also cites *Wilson v. American Red Cross,* 600 So.2d 216

(Ala.1992), but the Red Cross was found subject to the AMLA only because it was under contract to a hospital. *Id.* at 218–19. Finally, the plaintiff relies on *Therrell v. Fonde,* 495 So.2d 1046 (Ala.1986), but the defendant nurses were working under a co-defendant doctor, and the parties did not dispute that the AMLA governed. *Id.*

plaint states a claim against Wingett. Accordingly, Wingett was fraudulently joined and her citizenship does not defeat removal.

## CONCLUSION

For the reasons set forth above, the plaintiff's motion to remand is denied.